Donald Ray HACKETT *v.* STATE of Arkansas

CA CR 80-79                                   619 S.W. 2d 687

Court of Appeals of Arkansas
Opinion delivered August 26, 1981

· *E. Alvin Schay*, State Appellate Defender, by: *Jack R. Kearney*, Deputy Appellate Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *Arnold M. Jochums*, Asst. Atty. Gen., for appellee.

MELVIN MAYFIELD, Chief Judge. This is an appeal from a judgment of conviction for delivery of a controlled substance. Appellant was sentenced to eight years imprisonment and a fine of $5000.

The State contended that appellant sold marijuana to two undercover policemen in the presence of a confidential informant who arranged the sale. The alleged informant was not called to testify by the State but after the two policemen had testified and the State had rested, he was called by the defendant and denied that he was an informant. He testified that he did take the policemen to an apartment complex to help them find some marijuana, but he did not know they were policemen and was not working with them. He also admitted that he found a man who sold some marijuana to them and that he and the appellant were present when the sale was made, but he denied the appellant made the sale, received any money, or had any involvement other than that of a mere bystander.

On rebuttal the State called an investigator for the prosecuting attorney's office who testified that before the trial started that day the alleged informant came into his office, said he had been threatened, and expressed a fear for

his life. The investigator testified that the alleged informant gave the names of two people who had threatened him but neither was the defendant. The investigator also said that when the alleged informant was told the defendant's attorney was just outside the door in the prosecuting attorney's waiting room he jumped up and "started hollering that he was dead" and the investigator said he seemed "scared to death." The appellant contends that this testimony was hearsay and improper impeachment; that it concerned actions of the alleged informant and did not contradict his testimony; and that it was not admissible because it concerned a collateral issue.

In our opinion the trial court did not err in allowing this evidence to be introduced. In the first place, it was admissible for the purpose of impeachment. In *United States* v. *Briggs*, 457 F. 2d 908 (2nd Cir. 1972), the court said:

There is equally little merit in Brigg's objection to the court's allowing an agent to testify that, despite his denials on cross-examination, Jeffries had said on two occasions that Briggs had threatened his life if he did not testify in an exculpatory manner. Whether the receipt of such threats be characterized as showing "bias," or "corruption," or "interest," their relevance as impeaching Jeffries' testimony is too apparent to require argument.

In *Goodwin* v. *State*, 263 Ark. 856, 568 S.W. 2d 3 (1978), our supreme court quoted from an earlier case that "The bias of a witness is not a collateral matter" and that "pecuniary interest, personal affection or hostility, sympathy or animosity, a quarrel or prejudice, may always be shown to discredit a witness."

So the investigator's testimony that the alleged informant said he had been threatened and feared for his life was admissible for impeachment purposes and this was not a collateral matter.

Insofar as the testimony of the investigator concerned "actions," it is clear that a witness' conduct as well as his

expressions may be shown to impeach credibility. *Mo. Pac. Transportation Co.* v. *Norwood*, 192 Ark. 170, 90 S.W. 2d 480 (1936); McCormick, *Evidence* § 40 (2d ed. 1972); 3A Wigmore, *Evidence* § 950 (Chadbourn rev. 1970). The investigator's statement that the alleged informant seemed "scared to death" is certainly in harmony with the statements "he looked to me like he was in a kind of semiconscious condition" held admissible in *Jewel Tea Company, Inc.* v. *McCrary*, 197 Ark. 294, 122 S.W. 2d 534 (1938) and "she didn't look too well" held admissible in *Missouri Pac. Railroad Co.* v. *House*, 205 Ark. 211, 168 S.W. 2d 421 (1943). These "opinions" are admissible as shorthand renditions or collective statements of the facts observed. See McCormick, supra, § 11 at 25 n.31. 2 S. Gard, *Jones on Evidence* § 14.2 at 581 n.9 (6th ed. 1972). And it has been held that evidence of fear may be presented "as a means of demonstrating a witness' bias, thereby tending to discredit him." *United States* v. *Cerone*, 452 F. 2d 274 (7th Cir. 1971), cert. denied, 405 U.S. 964, 92 S. Ct. 1168, 31 L. Ed. 2d 240 (1972).

As to the hearsay contention, the traditional view with regard to inconsistent statements is that even if the previous statement is hearsay and inadmissible as evidence of the facts stated it is nevertheless admissible for the limited purpose of impeaching the witness. McCormick, supra, § 34; *United States* v. *Palacios*, 556 F. 2d 1359 (5th Cir. 1977); *Comer* v. *State*, 222 Ark. 156, 257 S.W. 2d 564 (1953). And under that view the court is required, when requested, to limit the statement to the issue of credibility and to so instruct the jury if there is one. *Southwestern Bell Tel. Co.* v. *McAdoo*, 178 Ark. 111, 10 S.W. 2d 503 (1928). See Arkansas Model Criminal Instruction 202. Under the conditions of Rule 801 of the Rules of Evidence a prior statement is not hearsay and may be considered as substantive evidence in a civil case and this is also true in a criminal case if the statement was made under oath and subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition. But with regard to bias, the hearsay problem is generally disregarded either on the theory that the testimony comes under the state of mind hearsay exception of evidence rule 803(3), 3 J. Weinstein & M. Burger, *Weinstein's Evidence* § 607 [03] n. 14 (1978), or on the theory that it is offered to discredit a witness,

not to prove the facts stated, *Smith* v. *United States*, 283 F. 2d 16, 87 ALR 2d 394 (6th Cir. 1960), cert. denied, 365 U.S. 847, 5 L. Ed. 2d 811, 81 S. Ct. 808 (1961). However, as pointed out by Weinstein, supra, § 607 [03], even though the courts are very liberal in accepting testimony to show bias there are some limitations in this regard. One method available to control the extent of such proof is Rule 105 of the Uniform Rules of Evidence. That rule provides that when evidence admissible for one purpose but not for another is admitted, the court, upon request, shall restrict it to its proper scope and instruct the jury accordingly. In the case at bar, however, no request was made to limit the investigator's testimony and long before the Uniform Rules of Evidence our court held that such request was necessary. *Mo. Pac. Transportation Co.* v. *Norwood*, supra.

Also prior to the Uniform Rules of Evidence we had a statute which provided that evidence could not be introduced to show that a witness had made a statement inconsistent with his testimony in court until he had been asked about the previous statement and allowed to explain it. See *Harris Const. Co., Inc.* v. *Powers*, 262 Ark. 96, 554 S.W. 2d 332 (1977). The legislative act which adopted the Uniform Rules repealed that statute and the matter is now controlled by rule 613 which differs in some respects from the former statute. *Baysinger* v. *State*, 261 Ark. 605, 550 S.W. 2d 445 (1977). Also see Field, *A Code of Evidence for Arkansas*, 29 Ark. L. Rev. 1 (1975). But the rule does not apply (and neither did the statute) to evidence offered to show bias except as bias might appear from an inconsistent statement. Weinstein, supra, § 607 [03], says there is disagreement among the courts about the matter and three different approaches are used: (1) no foundation required; (2) a foundation is required where the alleged evidence of bias consists of a statement made by the witness; and (3) the rule requiring a foundation is extended to cover cases where the evidence of bias takes the form of conduct. The matter is also discussed in McCormick, supra, § 40. In *Goodwin* v. *State*, supra, which was decided before the Uniform Rules of Evidence were adopted, the Arkansas Supreme Court said "it seems that under these circumstances it was necessary that

Roberts first deny the statements which would indicate bias" but the court held that a sufficient foundation had been laid.

In the instant case the alleged informant was called by the defense and testified on direct that he had not been threatened but said he had heard a rumor that he better do what's right. On cross-examination he said the rumor was that he would be in a lot of trouble if he didn't tell the truth. After the investigator had testified on rebuttal the alleged informant was recalled by the defense and testified in surrebuttal that he was not apprehensive about testifying when he was in the prosecutor's office, that he was not afraid to testify, and that he had not jumped up or down. There was no objection as to a lack of foundation for the investigator's testimony and the alleged informant was certainly "afforded an opportunity to explain or deny" any testimony given by the investigator and that meets the requirement of Uniform Rule of Evidence 613.

The only other argument for reversal concerns the closing argument of the prosecuting attorney. The appellant recognizes the discretion of the trial judge with regard to closing arguments but contends that the argument here was such as to cause the verdict to be rendered upon passion and prejudice.

Appellant's abstract contains only one objection to the argument. This occurred when the prosecuting attorney told the jury that the confidential informant "came today to testify not because we subpoenaed him, but because somehow the defense found out who the confidential informant was, and then the man started receiving threats on his life." The objection was "He's arguing matters that are not in evidence." The record discloses that when the investigator for the prosecuting attorney's office was on the stand he was asked by defense counsel if his office had subpoenaed the alleged informant. The investigator said that he was not sure about the matter. The prosecuting attorney then stated in open court that the man had not been subpoenaed by the state. So the statement that the confidential informant came to court without being subpoenaed by the state was not

outside of record. The rest of the statement objected to was argument based upon evidence in the record.

Although no objection was made, we comment on one other portion of the argument. It is contended that the prosecuting attorney characterized the defendant as a dope pusher and criminal who sells dope to little children. We do not think the record will support this interpretation. The prosecuting attorney did say that police officers who do undercover work have a difficult job, they have no choice of people with whom they deal, they have to deal with criminals, people who smoke dope and sell it to children on the street, but that they do their jobs to the best of their ability. Without an objection, we cannot find this argument to be error when we consider that the state's case was based upon testimony of an undercover officer who was directly contradicted by his alleged informant and by the defendant and his witnesses.

In our view the record does not support the appellant's contention that the prosecuting attorney's argument caused the jury's verdict to be based upon passion and prejudice. We find no abuse of the trial court's discretion in controlling and supervising the arguments of counsel.

The judgment is affirmed.