Gerald Dean FOWLER *v.* STATE of Arkansas

CA CR 98-1020 992 S.W.2d 804

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered June 16, 1999

*Brenton D. Bryant,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Gil Dudley,* Ass't Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. Gerald D. Fowler appeals his conviction of harassment in Washington County Circuit Court on May 14, 1998. Appellant argues that the trial court erred when it permitted the State to inquire during cross-examination into his and a witness's political beliefs and attendance at a meeting. We agree and reverse.

On October 9, 1997, the victim and her twelve-year-old daughter were driving home about 10:00 p.m. when they realized that they were being followed by the appellant. She was leaving work from an establishment called the Jones Center. The victim testified that appellant drove alongside her while she was stopped at a red light and subsequently began following her.

At the jury trial for harassment, the court allowed the prosecution to question appellant and one of his witnesses about 1) their attendance at meetings at the Jones Center and 2) appellant's political beliefs. Arguing appellant's credibility was at issue, the State's questions included:

1. What are those citizen's rights which you deal with . . . dealing just with the criminal justice system and the court system?

2. Do you feel that you've ever been abused by the government yourself?

3. Do you consider this to be a military court [and therefore does not have jurisdiction over you]?

Counsel for appellant objected to much of the line of questioning, arguing that it was not relevant to credibility or the issues in the case and that the State was attempting to prejudice the jury against the appellant. The trial court permitted the questioning. Appellant was convicted, sentenced to one year in the Washington County Jail, and fined $1000. Appellant argues that the line of

questioning was not permitted by Rule 608 of the Arkansas Rules of Evidence and was not relevant to the case. He contends that his political views were not probative of truthfulness or veracity. Furthermore, appellant argues that this line of questioning prejudiced his right to a fair trial by implying that he was inherently unreliable due to his beliefs and political association. The State argues that appellant's beliefs affected his credibility and whether or not he will testify truthfully in court. The State contends that appellant's beliefs go directly to whether or not he believes the court has authority over him.

■ Rule 608 of the Arkansas Rules of Evidence provides:

*Evidence of character and conduct of witness.*

(a) *Opinion and Reputation Evidence of Character.* The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations:

(1) *the evidence may refer only to character for truthfulness or untruthfulness,* and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

(b) *Specific Instances of Conduct.* Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, *if probative of truthfulness or untruthfulness,* be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

(Emphasis added.) The test of admissibility may be summarized in three steps: 1) the question must be asked in good faith; 2) its probative value must outweigh any prejudicial effect; 3) the prior conduct must relate to the witness' truthfulness. *Mackey v. State,* 279 Ark. 307, 651 S.W.2d 82 (1983). The rule limits cross-examination to specific instances of conduct that are clearly probative of truthfulness or untruthfulness, as distinguished from conduct pro-

bative of dishonesty. *Rhodes v. State*, 276 Ark. 203, 634 S.W.2d 107 (1982); *Green v. State*, 59 Ark. App. 1, 953 S.W.2d 60 (1997).

In *United States v. Abel*, 469 U.S. 45 (1984), testimony regarding membership in a secret prison gang was held to be probative of bias and not unduly prejudicial. One of the organization's tenets required each member to perjure himself on other members' behalf. The court held that, not only did the membership in the gang "show potential bias in favor of the respondent; because of the tenets of the organization described, it might also impeach his veracity directly." *Id.* at 56. The Court held "no view as to whether the evidence of . . . membership . . . would be a specific instance of . . . conduct which could not be proven against him by extrinsic evidence except as otherwise provided in Rule 608(b)." *Id.*

■ Whether evidence is unduly prejudicial is determined under Rule 403 of the Arkansas Rules of Evidence, which provides:

> *Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.* Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

This balancing is a matter left to the sound discretion of the trial judge, and his decision will not be reversed absent a manifest abuse of that discretion. *Bohanan v. State*, 324 Ark. 158, 919 S.W.2d 198 (1996); *Weger v. State*, 315 Ark. 555, 869 S.W.2d 688 (1994).

In this case, it is not alleged that appellant's political activities and those of his witness condoned lying in furtherance of the organization's purpose. Nothing in the record suggested that members of the appellant's group would perjure themselves. What was sought at trial was the use of appellant's political associations to attack his credibility and cast doubt as to whether he would testify truthfully in a court with a "military" flag.

■ The conduct must be *clearly* probative of truthfulness. Appellant's belief regarding military courts and their jurisdiction is

not clearly probative of his truthfulness. To the contrary, appellant testified that the Washington County Circuit Court did have jurisdiction over his case, and his witness testified that he understood the oath and what it meant to testify truthfully. During the testimony, the State did not attempt to show that appellant's organization required him to lie if he was in the "wrong" court or a court without jurisdiction. The State's line of questioning was improper under Rule 608, as it was not clearly probative of the appellant's truthfulness. The line of questioning was used to persuade the jury that, because of his political beliefs and association, appellant was the type of person who would be guilty of harassment and should be behind bars. The law of evidence does not presume that participation in a group that holds unconventional views manifests a propensity for truthfulness or untruthfulness. Examination into such matters is proper only where such associations are probative of a witness's truthfulness or untruthfulness under Rule 608.

Reversed.

ROBBINS, C.J., ROGERS, STROUD, and MEADS, JJ., agree.

JENNINGS, J., dissents.

JOHN E. JENNINGS, Judge, dissenting. The majority reverses Mr. Fowler's conviction of misdemeanor harassment on the basis that the circuit judge erred in permitting certain questions by the State on cross-examination. I respectfully dissent.

I have no disagreement with the view that a defendant's political beliefs are, generally speaking, irrelevant in a criminal prosecution. But the question in the case at bar is whether this defendant's beliefs were relevant on the issue of his credibility. His credibility was crucial to the case because he testified at trial and not only denied harassing the complaining witness, but also relied on the defense of alibi.

Questions in the law of evidence differ from those involving substantive law. A question of substantive law may frequently be posed and answered in the abstract; issues involving the law of evidence must almost always be viewed in context. The trial court may have time to ponder questions of substantive law, but deci-

sions on the admission of evidence must be made on the spot. It is said that the admission of evidence is a matter that lies within the sound discretion of the trial court. *Bell v. State*, 334 Ark. 285, 973 S.W.2d 806 (1998).

In the case at bar after the defendant had testified on direct, the State cross-examined:

> Q     Let me ask you, do your meetings, do you have discussions or talk about or deal with government matters at your meetings?
>
> A     No.
>
> MR. BRYANT:     Objection, irrelevant, beyond the scope of direct examination.
>
> MR. FRANCO:     I think if I'm allowed to flush this out I'll try to be as absolutely brief as possible but I think that I can get to a point that will deal directly with his credibility.
>
> THE COURT:     Well, I think if this goes to credibility then I'll permit it for at least the time being. Overruled.
>
> CONTINUING CROSS-EXAMINATION BY MR. FRANCO:
>
> Q     Do you deal with matters relating to the government?
>
> A     No, sir, we deal with matters relating to constitutional documents.
>
> Q     Okay, do these, do you have discussions regarding the authority that governments or more specifically courts have over you?
>
> A     No, sir, we discuss citizen's rights.
>
> Q     All right. In the realm of dealing with the court system, more specifically the criminal justice system?
>
> A     Well, it's mainly the exercise of your rights, citizen's rights.
>
> Q     What are those citizen's rights?
>
> A     Well, that would be too much to enumerate.
>
> Q     Please answer the question?

MR. BRYANT:     Your Honor, it's beyond me how this can have anything to do with the credibility of a witness.

THE COURT:     Well, again, Counsel, I have addressed the objection. I'm going to permit it up to a point so overruled. Now, you may proceed.

CONTINUING CROSS-EXAMINATION BY MR. FRANCO:

Q     What are those citizen's rights which you deal with — I'll narrow it for you, dealing just with the criminal justice system and the court system?

A     Well, we don't confine it to that.

Q     I want — let's just confine the topic to that for purposes of your answering the question?

A     Well, it's — you know and I don't know if I can quote it exactly, one of your founding fathers said, vigilance, and I can't quote it exactly but vigilance is the exercise of freedom to keep a nation's citizens free so it's to make people aware of what the constitution is for and how that it is to work as a restraint against governmental abuses.

Q     What governmental abuses?

A     Well, I don't know, I feel strange you'd ask me that question as if you don't think there's ever been any governmental abuses.

Q     Do you feel that you've ever been abused by the government yourself?

A     I feel like that there has been an excess of it by the government, that and of course they're discussing this every day in the newspapers and this is what the courts are for is to try to work out the differences of people's opinions as to what is correctly judicial and what is not.

Q     That flag right there has gold stripes on it; is that correct?

MR. BRYANT:     Objection, Your Honor, may I approach please?

THE COURT:     You may.

MR. BRYANT:     Your Honor, the only thing the Prosecutor is trying to do in this case is prejudice the Jury against my client because of his political beliefs. There's no way this has anything to do with the ability to tell the truth or not. This is an outrageous attempt on the Prosecutor's part to prejudice my client and I'd ask that he not be permitted to do that.

MR. FRANCO:     Throughout the entire prosecution of this matter Mr. Fowler has objected to the flag with gold stripes on it and stated it's military and doesn't have the authority over him, it's my understanding from his statement. I think if that's the belief here today I think it goes to, directly to the fact of if he thinks they have authority.

THE COURT:     Well, you can narrow your question down to that particular issue which goes to credibility. I'm going to permit it but we need to narrow the scope of the inquiry and get on with it. All right. You may proceed.

BY MR. FRANCO:

Q     What's the significance of the gold stripes on that flag right there?

A     It shows that it's a military flag.

Q     In your opinion, and?

A     According to the studies that we have had, that's correct.

Q     All right. What's that mean in your opinion if it's a military flag?

A     Well, if — now under, I'm quoting from the studies, all right.

Q     Yes, sir, yes, sir?

A     USC 1, I believe 4D, denotes the U.S. constitutional flag of America.

Q     What type of flag is that supposed to be, what's the gold mean?

A     It does not have a symbol on top.

Q     The gold fringe means it's a military flag; is that correct?

A    Yes, sir, according to army regulations, according to certain codes.

Q    Is it your belief that if it's a military flag then there — isn't it true that you're — it's your belief that since we have military flag in the courtroom this is basically a military court and we don't have jurisdiction over you in this court, is that your belief?

A    I understand that Reed verus Calvert says no U.S. citizen shall be tried in a military court.

Q    Yes, sir?

A    And President George Bush, and I don't remember the date right now, signed an executive order that all courts in the United States are military courts.

Q    He did?

A    He did.

Q    Do you consider this to be a military court?

A    I'm just telling you what the record is.

Q    I'm asking do you consider this to be a military court?

A    I don't know as I have an opinion. I'm telling you that's what I have read by executive order of a U.S. Supreme Court ruling.

Q    One more question on this topic. Based upon your studies and the fact that's a military flag, you're not in the military; correct?

A    Not now.

Q    Do you feel that you are in the wrong court here today to be tried for the charges that have been brought against you?

A    I'm here.

Q    Do you feel by — based upon your belief and your study that —

A    Let me ask — may I ask you a question?

THE COURT: Now wait a minute, wait a minute. This process is not going to work at all unless we follow some basic rules. Mr. Franco, you ask the questions and you respond to the questions if possible with either a yes or no and if you don't understand the question simply tell him and he will restate the question and maybe sometime before sunset this matter will come an end. Please try again to repeat the question and you just answer, you ask the question and you respond as briefly and succintly as you possibly can hopefully with a yes or no and then we'll move ahead.

BY MR. FRANCO:

Q    Based upon your study and your understanding of this executive order, do you feel that you are in the proper court yourself for the charges that have been filed against you?

A    To the best of my study until I'm shown differently or can be proved differently I'm a U.S. citizen in one of the fifty states, I'm under the U.S. Constitution of America as a free citizen, I'm not in the military and if it's correct according to the study that's a military flag, that flag denotes what court I'm under in this room.

Q    So you, based upon your study you believe this to be a military court?

A    According to George Bush.

Then, on redirect:

BY MR. BRYANT:

Q    Gerald, are you nervous about being here today?

A    I'm totally relaxed.

Q    Even though you may have a disagreement about whether or not that particular flag is the proper flag to be displayed in a courtroom, do you fully accept — I mean what's your thoughts about this Court's jurisdiction over you, do you accept that?

A    Yeah, I have accepted it.

Q   And what are your thoughts about the role of the Jury here today?

A   I think that's a great American way.

Nick Herrington was an alibi witness for the defendant. The following transpired during the State's cross-examination:

Q   Your meetings out there, what type meeting is that?

MR. BRYANT:   Object, Your Honor, beyond the scope of direct examination.

MR. FRANCO:   He said he was at the meeting. I think he opened the door.

THE COURT:   Well, I really fail to see how it's relevant to these proceedings, Counsel. If you can tie it into something, I'll permit a few questions.

MR. FRANCO:   It's just like when we did Mr. Fowler, I'll get right to the point.

BY MR. FRANCO:

Q   You notice the flag over there?

A   Yes, sir.

Q   What sticks out on that flag to you?

A   A variety of things.

Q   What about the gold fringe around the flag?

A   Indicates military law.

Q   What does that mean to you?

A   It's not common law.

Q   Okay, it's not common law?

A   No, sir it's not.

Q   The law that we're doing in court here today, the trial we have is a criminal trial?

A   Yes, sir.

Q   What type of law is this we're doing here today?

A    That flag indicates military law.

Q    In your opinion is this a military court?

A    Not my opinion.

Q    Whose opinion?

A    Title 4, U.S. Code, Section 102, which defines the flag, Title 36, U.S. Code 71-73, which goes further into the flag, Army Regulation 840-10, that really gets into it, Chapter 8.

Q    Do you believe that Mr. Fowler is in the right court today for the charges for, he's been charged with, a violation of state law —

MR. BRYANT:    Your Honor, this is all very interesting.

THE COURT:    Overruled, it goes to credibility. I'm going to permit it. Overruled.

BY MR. FRANCO:

Q    You believe Mr. Fowler is in the correct court today based upon the flag that's here and he's charged with a crime under the laws of the State of Arkansas?

A    How you define a crime —

Q    The crime of harassment, he's charged with the crime of harassment?

A    Well —

Q    It's a yes or no question, do you believe he's in the right court?

A    I don't know.

Q    Do you — you're here as a witness in this court today and I think you took an oath, you were sworn in; is that correct?

A    Yes, sir.

Q    Does the fact that you're under that flag, you don't — let me back up just a second, you believe that that's the wrong flag to be in this courtroom, correct?

A    We don't have a complete set of flags here, let's put it that way.

Q   What other flag is missing then if that flag is flying?

A   The American flag of peace means Old Glory is present, do you see it?

Q   So we have the right flag?

A   You don't have a complete set.

Q   Based upon that do you believe that you're bound by the authority of this court here today?

A   I'm a witness here.

Q   Well, do you believe based upon your belief that Mr. Fowler is bound by the authority of this court?

A   Yes, he's got an attorney.

Q   No, let me restate my question. Do you believe that Mr. Fowler is bound by the authority of this court, that he comes under the authority of this court based upon what you have talked about, the flag and stuff —

MR. BRYANT:    Your Honor, how is the witness supposed to testify as to what Mr. Fowler believes? I believe that's improper.

THE COURT:    That wasn't the question. The question was does this witness believe that Mr. Fowler is bound by the authority of this court, which I assume goes to his belief in this system which to some extent has something to do with his credibility. I think if he can narrow the issue to one of credibility I'm going to permit the inquiry and please, let's move along.

MR. FRANCO:    That's the last question I have, Your Honor, and that's exactly what I'm asking about.

BY MR. FRANCO:

A   If he didn't believe he was bound he wouldn't be here.

Then, on redirect:

BY MR. BRYANT:

Q   Mr. Herrington, understand what it means to take an oath to tell the truth?

A   Yes, sir.

Q     Are you bound by that oath here today?

A     Yes, sir.

Generally speaking, whether evidence is admissible depends upon whether it is likely, all things considered, to advance the search for the truth. *Gist v. Meredith Marine Sales & Serv.*, 272 Ark. 489, 615 S.W.2d 365 (1981); Ark. R. Evid. 102. Also as a general rule, all relevant evidence is admissible. Ark. R. Evid. 402.

The credibility of any witness is always at issue and always important. This is why our courts have held that the bias of a witness is not a collateral matter. *Goodwin v. State*, 263 Ark. 856, 568 S.W.2d 3 (1978); *Hackett v. State*, 2 Ark. App. 228, 619 S.W.2d 687 (1981). In *Koch v. Koch Industries, Inc.*, 2 F. Supp.2d 1385 (D. Kan 1998), the court said:

> Although not specifically mentioned in the Rules, proof of bias, that is, any evidence of a relationship, circumstance or motivation which might lead a witness to slant, unconsciously or otherwise, his testimony is almost always relevant. A successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony. Courts generally are liberal in admitting evidence of bias because a jury must be sufficiently informed of the underlying relationships, circumstances, and influences operating on the witness to determine whether a modification of testimony reasonably could be expected as a probable human reaction. Proof of a witness's motivation or potential bias is critical when the witness is a party and key witness to the alleged events. The range of evidence that may be elicited for the purpose of establishing bias of a witness is quite broad. (Quotation marks and citations omitted.)

*Id.* at 1389.

Here the State successfully elicited from Mr. Fowler his view that the flag in the courtroom was a military flag; that *Reed v. Calvert* says that no United States citizen shall be tried in a military court; and that President Bush signed an executive order that all courts in the United States are military courts. From Mr. Herrington the State elicited his view that the flag in the trial court

was not "common law" but indicated military law; that the United States Code stated that the trial court was a military court; and that Herrington was uncertain that Mr. Fowler was in the right court. It is true, as the majority says, that the State did not obtain an admission from either witness that he was prepared to lie because he was in the wrong courtroom. Nevertheless, the evidence elicited was circumstantial evidence bearing on the witnesses' credibility.

> The man who believes that he is under no legal or moral obligation at all times and under all circumstances to tell the truth under the sanction of a oath has destroyed the only test by which he can claim credit at the hands of men. Such evidence is not establishing a bad character from particular facts.

Wigmore, *Evidence* § 957 (Chadbourn Rev. 1979) quoting from *Anonymous*, 19 SCL (1 Hill) 251, 252 (1833). Any material fact may be established by circumstantial evidence. *Pitts v. Greene, Administrator*, 238 Ark. 438, 382 S.W.2d 904 (1964). The fact that evidence may be of only slight relevance is not a basis for its exclusion. *See Dooley v. Cecil Edwards Const. Co.*, 13 Ark. App. 170, 681 S.W.2d 399 (1984).

The importance of cross-examination as an engine for truth is well known. While the State is not entitled to the benefit of the confrontation clause, like any other litigant it is entitled to the right of cross-examination. The cross-examiner is given wide latitude, particularly in matters relating to the witness's credibility. *Gustafson v. State*, 267 Ark. 830, 593 S.W.2d 187 (1979); *Shaver v. State*, 37 Ark. App. 124, 826 S.W.2d 300 (1992). A broad view of cross-examination is especially important where it might reveal bias on the part of a key witness. *Wilson v. State*, 289 Ark. 141, 712 S.W.2d 654 (1986). The trial judge has considerable discretion in determining the scope of cross-examination. *Boreck v. State*, 277 Ark. 72, 639 S.W.2d 352 (1982). In *Davis v. Alaska*, 415 U.S. 308 (1974), Chief Justice Burger, speaking for the Court, said:

Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit, the witness.

. . .

A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony.

*Id.* at 316 (citation omitted).

And in *State v. Elijah*, 289 N.W. 575 (Minn. 1940), the Minnesota Supreme Court said:

Cross-examination is an agency for the development of truth in judicial inquiries. Its chief purpose is to enable the trier of fact to determine what evidence is credible and what is not. For that purpose it is important to show the relation of the witness to the cause and the parties, his bias or interest or any other fact which may bear on his truthfulness.

. . .

Cross-examination to show the bias, prejudice, interest or disposition of the witness to tell the truth is a matter of right, the exercise of which is indispensable to show the truth. The authorities cited *supra* that a party has a right to show the bias or interest of a witness hold without exception that the denial of the right is prejudicial and error.

. . .

It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from the denial of the opportunity to place the wit-

ness in its proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them.

*Id.* at 578–79 (citations omitted).

I am not insensitive to the view that one's political beliefs are entitled to protection from unwarranted inquiry. Nevertheless, the Constitution does not erect a per se barrier to the admission of evidence concerning one's beliefs and associations. *Dawson v. Delaware*, 503 U.S. 159 (1992). If one's political beliefs are relevant, evidence concerning them is admissible. *United States v. Myers*, 410 F.2d 693 (2nd Cir. 1969). *See also, McKnight v. State*, 874 S.W.2d 745 (Tex. App. 1994).

Although the majority mentions Rules 403, it does not decide the case on that basis. Indeed, it could not because the Rule 403 weighing issue was neither raised nor ruled upon at trial. *See Hill v. State,* 325 Ark. 419, 931 S.W.2d 64 (1996). Nor is the issue raised on appeal.

The court instead decides the case on the basis of Rule 608. This is simply not a Rule 608 case. The State was not attempting to impeach the witnesses' credibility by proving specific instances of conduct — it was trying to establish that the defendant and his witness did not believe the Washington County Circuit Court had authority to try the case and thus cast doubt upon their obligation to tell the truth under oath. *Rhodes v. State* and *Green v. State*, cited by the majority, are not applicable here.

While the majority mentions *United States v. Abel*, 469 U.S. 45 (1984), it does not take to heart its lessons. In *Abel*, the Ninth Circuit Court of Appeals had held that a suggestion of perjury, based upon a group tenet, was impermissible. The Circuit Court said:

Neither should the government be allowed to impeach on the grounds of mere membership, since membership, without more, has no probative value. It establishes nothing about the individual's own actions, beliefs, or veracity.

The United States Supreme Court, in a unanimous opinion, reversed. The Court recognized that the Federal Rules of Evidence (like the Arkansas Rules of Evidence) do not specifically deal with impeachment for "bias" and that this is a separate matter from impeachment by conduct under Rule 608. The Court found, however, that the right to impeach on this basis survived the adoption of the Federal Rules. The Court recognized the importance of cross-examination on "matters affecting the credibility of the witness." It said:

> Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.

*Abel*, 469 U.S. at 52. The Court rejected the appellant's 608(b) argument.

The majority concludes that the State's "line of questioning was used to persuade the jury that, because of his political beliefs and association, appellant was the type of person who would be guilty of harassment and should be behind bars." While there is some chance that the majority may be right, I see no reason to doubt the prosecutor's statement to the trial court that he believed that the line of questioning went to the credibility of the witnesses.

To sum up, my conclusions are: (1) that the credibility of the defendant and his alibi witness was central to the resolution of the case; (2) that the questioning was relevant on the issue of the witnesses' credibility; (3) that the trial court was obliged to allow considerable leeway on cross-examination; (4) that there is no per se bar regarding inquiry into one's political beliefs; (5) that Rule 608 has no bearing on the case; (6) that the trial court had considerable discretion in permitting the inquiry; and (7) that appellant has demonstrated no abuse of that discretion. Therefore, I respectfully dissent.