BRANDON J. HARRISON, Judge
Jerrod Craven appeals his convictions on two counts of aggravated robbery and one count of theft of property, arguing that the circuit court erred in (1) denying his motion for directed verdict, (2) limiting the defense's cross-examination of Jalen Hudson, and (3) finding that Hudson's interview with the prosecutor was not a statement. We affirm.
In a felony information filed 27 March 2017, Craven was charged with committing two counts of aggravated robbery and one count of theft of property on 30 November 2016. The information was amended in *44 June 2017 to add Jalen Hudson as a codefendant.
In April 2017 and again in August 2017, Craven moved for discovery, specifically any written or recorded statements made by any codefendant or other State witness. Immediately prior to the jury trial on 19 June 2018, the circuit court convened a hearing on those motions and other preliminary matters. The State explained that Hudson had agreed to testify and admit that he previously lied to police officers about a third person who was involved in the November 30 robbery. The State voiced concern that defense counsel would attempt to bring up other aggravated-robbery charges against Hudson in Ashley County, and it asked that Hudson's cross-examination be limited in scope. The defense responded that it had a right to impeach the witness with prior lies, but the State asserted that if the witness takes the stand and admits he lied, then he cannot be impeached.
The State also said it had recently become aware that Hudson had an additional warrant for aggravated robbery out of Little Rock but that the warrant had not yet been served. So, the State asserted, Hudson would "be required to take the Fifth Amendment through discussions with his attorney and so those questions and the facts have no relevance because he cannot answer them." The defense objected and argued that "Hudson discussed this very case that he's not been served on with Detective Bryant and Detective Oberle when they initially took his statement," and "the case where he's not been served on is a critical part of the basis for the affidavits for search warrant on not only Mr. Craven's case but Mr. Hudson's other case which he's pled guilty to." The defense contended that it had a constitutional right to impeach the credibility of the State's key witness. The State responded that Hudson was taking the Fifth regarding a separate case, not the case currently on trial. The State explained that Hudson was charged with committing two aggravated robberies on December 11; one charge to which he had already pled guilty (the Sherwood robbery), and one charge for which he had not yet been served with a warrant (the Little Rock robbery). The aggravated robbery in the current case occcured on November 30 in Jacksonville, and Hudson had relevant testimony about that robbery.
The court ruled that the defense could not "talk about the case in which there's a warrant. There will be no mention of a warrant. That's not relevant to this case." Defense counsel continued to argue that Hudson had lied to police about the December 11 incident during its investigation of the November 30 incident, so it was relevant. The court reiterated, "The warrant and anything related to it, you can't talk about it."
At trial, the State presented the following testimony. Rachel Hale, the assistant manager at the Dollar General on Military Road in Jacksonville, testified that on 30 November 2016, she and a coworker were preparing to close the store when she heard a voice say "[l]eave the money there and give me all your money." Hale looked up from the register and saw a man with a gun in his hand. Another man approached her with a backpack and directed her to put the money in the bag. After retrieving money from the other registers and the safe, Hale and her coworker were directed into the restroom. As soon as the restroom door closed, Hale used her cell phone to call 911. Hale said that one of the men was wearing a dark hoodie, dark pants, dark gloves, and a handkerchief covering his face. The other man was wearing blue jeans with an emblem on the pockets and brown gloves. She confirmed that the Dollar *45 General had a video-surveillance system. On cross-examination, she said she could not identify either man. Christina Waltman, the other Dollar General employee that was present on November 30, provided testimony similar to Hale's. She said that one man was wearing a black hoodie and the other man was wearing a gray hoodie; the man with the gray hoodie had the gun, and the man with the black hoodie had the backpack. She also confirmed that she could not identify either man.
Investigator Mike Bryant, an employee of the Pulaski County Sheriff's Office, testified that he had investigated the aggravated robbery that occurred on November 30. Bryant obtained surveillance footage from the store and described the actions on the video while it was played for the jury. The footage showed the man in the gray hoodie speaking on a cell phone while walking around the store.
Before the State called Jalen Hudson as a witness, the attorneys and the court had another discussion about the scope of Hudson's testimony. The court reiterated, "You-all can ask him any questions you want to about whatever it is that's relevant. Then you can ask him about the warrant, but you cannot ask about any specifics behind the warrant." Defense counsel continued to argue that he should be allowed, under Ark. R. Evid. 608(b), to inquire about additional instances of untruthfulness committed by Hudson to show his bias and motive. The court ruled that defense counsel could not "ask successive questions about the different instances because they wouldn't be relevant in this matter."
Hudson testified that he knew Craven and that they had attended Arkansas Tech together. Hudson said that he participated in the aggravated robbery of Dollar General on November 30 with Craven and Stacy Cox. While Craven and Cox went into the store, Hudson drove around and talked on the phone with Craven. Hudson identified Cox as the man wearing the gray hoodie and Craven as the man wearing the black hoodie. He confirmed there was a gun used in the robbery.
Hudson also confirmed that he had a prior conviction for conspiracy to commit aggravated robbery in Ashley County and had pled guilty to two counts of aggravated robbery; one count pertaining to the November 30 robbery and another that occurred on December 11. Hudson's plea agreement required that he give truthful testimony at Craven's trial. Hudson also acknowledged a recent warrant for his arrest issued in Little Rock but said that his negotiated plea did not include that case. He admitted that he had lied in a statement given to Officer Bryant and told him that it was Joseph Aikens, not Stacy Cox, who was the third participant in the November 30 robbery. Hudson said he and Cox were close and that he was trying to protect Cox. Hudson had also lied and said that Craven was involved in the December 11 robbery, when in fact only he and Cox were involved.
On cross-examination, Hudson confirmed that the November 30 robbery occurred in Jacksonville, and the December 11 robbery occurred in Sherwood. He again said he was aware of the Little Rock warrant but that he was asserting his Fifth Amendment right not to incriminate himself. Based on an email he had received from the prosecutor regarding Hudson's expected testimony, defense counsel proceeded to question Hudson about a statement he gave to the prosecutor around June 8, which led to the following colloquy.
PROSECUTOR : I mean, at this point he's using hearsay without the ability to cross-examine me. I was just giving him a general understanding of the *46 facts and I was writing down facts as I was talking. I'm not sure what was right and what was wrong. It was just a general idea of what was being said.
THE COURT : So this is a statement he gave to you.
PROSECUTOR : It's not necessarily the statement. It's my summary of my understanding at the time.
THE COURT : So you weren't sitting in a room taking that down.
PROSECUTOR : No, no. This was-this was at least hours, if not the next day. I mean, I think he can ask him what's true and what's not true. But not in reference to that statement. That was just to give him an idea of the witness testimony.
DEFENSE : This is another statement given in this case.
THE COURT : This is not a statement.
PROSECUTOR : I could be wrong, yeah.
DEFENSE : It's his recollection of the statement. It was given to him directly.
THE COURT : That's just his notes. Is that what it is?
PROSECUTOR : Yes.
THE COURT : Your notes?
PROSECUTOR : Yes. And we give it to the defense attorney so that he's aware of it. It wasn't meant to be impeached.
THE COURT : It's not a statement.
DEFENSE : Okay. Note my objection, Your Honor.
THE COURT : Yes, sir.
Hudson acknowledged that he had agreed that in exchange for his truthful testimony, he would receive a sentence of twelve years' imprisonment on the two aggravated-robbery charges from November 30 and December 11, and twenty years' imprisonment in the Ashley County robbery, all to run concurrently.
After Hudson's testimony concluded and the jury was dismissed for the day, defense counsel made the following proffer:
I had previously objected to the motion in limine wherein the court had cautioned me and directed me not to inquire as to [an] armed robbery, aggravated robbery, occurring at Springer Boulevard in Little Rock, Arkansas, on December the 11th of 2017. I had what I would describe as impeachment evidence to specifically inquire as to Jalen Hudson's involvement in said robbery. I think it was critical to the Defense that I be allowed to inquire of that robbery, (A), because evidence and facts concerning the Springer Boulevard robbery are referenced in several search warrants in the prosecution's case file. Additionally, Detective Oberle, following his interview on January the 13th of Jalen Hudson, and this is all discussing Jalen Hudson's testimony, specifically had Mr. Hudson inquire as to why he had a hold out of Little Rock. ... Detective Oberle stated that a Little Rock detective would be down to discuss his involvement in that robbery. Mr. Hudson said he would like to speak to them because he wanted to, I believe, clear his name.
What we now know and what this trial will later reveal is that not only did he actually participate in the robbery on Springer Boulevard on December the 11th, but another unnamed defendant, Stacy Cox, will be implicated in said robbery.
I have cited to the court in reliance on my argument 608(b) which indicates that if impeachment merely involves credibility, collateral issues may not be discussed. However, if it involves bias, interest or motive you can inquire.
I rely on Goshen versus State , 84 Ark.App. 387, 141 S.W.3d 907 (2004) case, for the proposition that the prohibited *47 cross-examination goes directly to motive and bias on the part of Jalen Hudson. Additionally, rely on Simpson versus State , 274 Ark. 188, 623 S.W. 2nd 200 (1981), ... [and] the Fifth and Sixth amendment to the Arkansas and Federal Constitution wherein I have a right to fully cross-examine any witness which will benefit the Defense in the case at bar.
On the second day of trial, Officer Bryant was re-called to the stand and testified that he interviewed Hudson on 13 January 2017. After that interview, Bryant obtained a warrant for Craven's cell phone records and later interviewed Craven on February 16. Bryant said that based on the GPS coordinates associated with the cell phone records, he determined that a phone call from Craven to Hudson occurred in Jacksonville on November 30 at approximately 10:38 p.m. During Bryant's interview with Craven, Bryant asked Craven where he was on the night of November 30, and Craven said that he was either on his way back from Austin, Texas, or in Russellville. Craven confirmed he had his cell phone with him on November 30. When confronted with the cell phone records contradicting his account, Craven told Bryant that he had forgotten to tell him (Bryant) that his phone had been stolen. Craven denied any involvement in a robbery.
Dan Reller, a compliance-security analyst with AT & T, verified that a cell phone call between Craven and Hudson occurred on the night of November 30 and that the call lasted approximately twenty-two minutes.
After the State rested, the defense moved for a directed verdict, arguing that the State had not met its burden of proof.
They have put on testimony of a now confirmed liar through the testimony of Jalen Hudson. I believe he has no credibility.
They put on phone records and they have been tremendous. But at this point they cannot put that phone in the hands of Jerrod Craven during the commission of this robbery, period. Lacking that-those two-or that one piece of evidence, I think the State has not met its burden.
The defense also renewed its objection to the limitation placed on Hudson's cross-examination. The motion was denied, and the defense rested without calling additional witnesses.[1] The case was sent to the jury, which found Craven guilty on all counts and found that he had employed a firearm in the commission of the offenses. Craven was sentenced to a total of thirty-one years' imprisonment. He now appeals his convictions.
I. Sufficiency of the Evidence
Although Craven presents his challenge to the circuit court's denial of his motion for directed verdict as his third point on appeal, we must address that challenge first for purposes of double jeopardy. See Woolbright v. State , 357 Ark. 63, 160 S.W.3d 315 (2004). This court treats a motion for a directed verdict as a challenge to the sufficiency of the evidence. Gwathney v. State , 2009 Ark. 544, 381 S.W.3d 744. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the *48 State, consider only the evidence that supports the verdict, and affirm if substantial evidence exists to support the verdict. Id. Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. Campbell v. State , 2009 Ark. 540, 354 S.W.3d 41. Circumstantial evidence may constitute substantial evidence to support a conviction; to be substantial, circumstantial evidence must exclude every other reasonable hypothesis than the guilt of the accused, and that determination is a question of fact for the trier of fact. Holland v. State , 2017 Ark. App. 49, 510 S.W.3d 311. Weighing the evidence, reconciling conflicts in the testimony, and assessing credibility are all matters exclusively for the trier of fact, in this case the jury. Id. The jury may accept or reject any part of a witness's testimony, and its conclusion regarding credibility is binding on the appellate court. Id.
On appeal, Craven argues that the only evidence that placed him at the scene of the robbery was Hudson's testimony and the cell phone records. But Craven had told police that he was out of town at the time of the robbery and that his cell phone had been stolen. Thus, the State needed to provide more evidence to support his conviction. The State counters that the jury was free to disregard Craven's claims and to resolve the issue of Hudson's credibility in favor of the State. It contends that viewed in the light most favorable to the State, substantial evidence supports Craven's guilt. We agree. Given our standard of review, we hold that there was enough evidence to compel the jury to a conclusion one way or the other without resorting to speculation or conjecture.
II. Cross-Examination
Evidentiary rulings are a matter of discretion and are reviewed only for abuse of that discretion. Gilcrease v. State , 2009 Ark. 298, 318 S.W.3d 70. Abuse of discretion is a high threshold that requires that the circuit court act improvidently, thoughtlessly, or without due consideration. Hajek-McClure v. State , 2014 Ark. App. 690, 450 S.W.3d 259. While an accused is accorded wide latitude in cross-examination to impeach the credibility of a witness against him, the circuit court may also impose reasonable limits on what testimony is admitted based on concerns about harassment, prejudice, waste of time, or interrogation that is repetitive or only marginally relevant. Gilcrease, supra.
Craven argues that Hudson was a "biased witness who had both a troubling history of committing armed robberies as well as questionable motives and biases for testifying" against him. He contends that Hudson discussed details of the November 30 robbery when he was arrested and charged with the December 11 Little Rock robbery. But because he was not allowed to question Hudson about that robbery or his interview with police when he was arrested for that robbery, Craven claims he was "prohibited from eliciting testimony from Mr. Hudson as to the issues of bias, interest, and motive."
The State counters that the circuit court properly limited the use of evidence of Hudson's other crimes to challenge his credibility or show bias. Hudson admitted to his convictions for other crimes, his participation in the November 30 robbery, and his false statements given to authorities on more than one occasion. He also testified about his plea agreement. And contrary to Craven's assertion, Hudson's participation in the Little Rock robbery did not implicate his truthfulness and could not be used to impeach his credibility. See Maiden v. State , 2014 Ark. 294, 438 S.W.3d 263 (supreme court has interpreted *49 Rule 608 to permit inquiries on cross-examination into conduct that is clearly probative of truthfulness or untruthfulness but to disallow cross-examination into specific instances that are merely probative of dishonesty). Thus, the State argues, Craven was not denied the opportunity to challenge Hudson's veracity or credibility in front of the jury.
We hold that Craven has failed to demonstrate how details of Hudson's involvement in the Little Rock robbery show bias on Hudson's part in this case. The types of cases in which appellate courts have found that cross-examination should have been allowed because the matters reflected on the witness's interest, motives, and bias include the following: Henderson v. State , 322 Ark. 402, 910 S.W.2d 656 (1995) (evidence of witness tampering is evidence of bias and consciousness of guilt and is thus admissible); Wood v. White , 311 Ark. 168, 842 S.W.2d 24 (1992) (hostility of a witness against a party admissible to show bias); Goodwin v. State , 263 Ark. 856, 568 S.W.2d 3 (1978) (officer's threat to make sure that the defendant went to prison if he did not become an informant relevant to the issue of bias and thus admissible); Morris v. State , 21 Ark. App. 228, 731 S.W.2d 230 (1987) (defendant's attempt to have a witness change her testimony admissible under Rule 404(b)); Tubbs v. State , 19 Ark. App. 306, 720 S.W.2d 331 (1986) (witness's offer of money to another witness to get the witness to change testimony admissible as evidence of bias); Hackett v. State , 2 Ark. App. 228, 619 S.W.2d 687 (1981) (threatening a witness in an effort to keep the witness from testifying against the defendant admissible on the issue of bias).
In this case, Craven has failed to articulate, either below or to this court, how Hudson was biased against him, and specifically how Hudson's statement to the police about the December 11 Little Rock robbery contained evidence of bias. Below, defense counsel argued that he could "unequivocally" show that Hudson lied in that statement, but that is not the same as demonstrating bias. In the words of the circuit court, defense counsel wanted Hudson to say, "Yes, I lied about that. Yes, I lied about that too. Yes, I lied about that third thing too." But our supreme court recognized in Kennedy v. State , 344 Ark. 433, 42 S.W.3d 407 (2001), that once a witness acknowledges having made a prior inconsistent statement, the witness's credibility has successfully been impeached. In other words, "[a]n admitted liar need not be proved to be one." Id. at 445, 42 S.W.3d at 414 (quoting Ford v. State , 296 Ark. 8, 18, 753 S.W.2d 258, 263 (1988) ). Thus, we hold that the circuit court did not abuse its discretion in limiting Craven's cross-examination of Hudson.
III. Hudson's Statement to the Prosecutor
As explained above, during Craven's cross-examination of Hudson, defense counsel utilized an email sent to him by the prosecutor; this email contained a summary of the testimony that Hudson was expected to provide. The State objected to Craven's use of this email, and defense counsel appeared to argue that the email constituted a statement by Hudson. The court disagreed, and the trial continued, with defense counsel stating, "Note my objection, Your Honor."
Now, on appeal, Craven argues that the circuit court "erred on his understanding of the nature of a 'statement' by a codefendant" and that the State failed to provide him the "substance" of Hudson's oral statement to the prosecutor. Craven cites Ark. R. Crim. P. 17.1(a)(ii) (2018), which requires the prosecuting attorney to disclose, upon request, any written or recorded *50 statements and the substance of any oral statements made by the defendant or a codefendant. Craven interprets the circuit court's ruling at trial as a finding that Hudson's discussion with the prosecutor was not a statement, and he argues that he "properly objected to not being provided with the substance of said oral statement."
We cannot address Craven's argument on appeal because he did not make it below. Craven argued below that the prosecutor's email was a statement; on appeal, he asserts that the State failed to provide him with the "substance" of Hudson's oral statement. Arguments not raised below are waived, and parties cannot change the grounds for an objection on appeal but are bound by the scope and nature of the objections and arguments presented at trial. Goins v. State , 2019 Ark. App. 11, 568 S.W.3d 300. We also note Craven failed to proffer the email at trial; that oversight would preclude a substantive review of his point on appeal regarding whether a statement was made and whether a statement was provided as required by Rule 17.1. See Brown v. State , 368 Ark. 344, 246 S.W.3d 414 (2007) (when evidence is excluded by the circuit court, the party challenging that decision must make a proffer of the excluded evidence at trial so that this court can review the decision, unless the substance of the evidence is apparent from the context).
Affirmed.
Hixson and Brown, JJ., agree.

Although Craven's attorney failed to renew his motion for directed verdict at the close of all evidence, the Arkansas Supreme Court has previously held that "when a defendant presents no evidence after a directed verdict motion is made, further reliance on that motion is not waived." Robinson v. State , 317 Ark. 17, 23, 875 S.W.2d 837, 841 (1994). Therefore, because Craven put on no additional evidence after the motion was made, his failure to renew it is not fatal to his appeal.