Cite as 2022 Ark. App. 270

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CR-21-553

|  |  |  |
|---|---|---|
| PR | | **Opinion Delivered** June 1, 2022 |
| | APPELLANT | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26JV-20-296] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE CECILIA DYER, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## BRANDON J. HARRISON, Chief Judge

The Garland County Circuit Court found PR guilty of second-degree sexual assault and adjudicated him delinquent. He now appeals and argues that the circuit court erred in denying his motion for directed verdict, denying his recusal motion, and denying his motion for new trial. We affirm the circuit court.

On 12 November 2020, thirteen-year-old PR was charged with committing second-degree sexual assault. The State's petition for delinquency alleged that, in September and October 2020, PR had harassed a female classmate, AP, by "us[ing] his hands to touch and grab [AP] over her worn clothing on her inner thigh, her buttocks, and her breast."

In January 2021, defense counsel moved to appointment a special prosecutor. The motion explained that the chief deputy prosecutor, Kara Petro, is AP's maternal aunt and the original complainant, so the prosecutor's office should recuse itself and request a special prosecutor. The motion was granted by agreement of the parties, and the circuit court designated Hugh Finkelstein as special prosecuting attorney.

The circuit court convened a bench trial on 27 May 2021, at which the following evidence was presented. Fourteen-year-old CM sat to AP's left in their eighth-grade science class, and PR sat to AP's right. At one point, AP whispered to CM, "Look where his hand is." CM took two photographs under the table; one photo showed PR's hand on AP's right leg, the other showed his hand higher up on AP's left leg. CM observed this behavior on numerous occasions. It surprised AP, and she asked PR to stop multiple times and told him that it hurt. She also tried to move his hand off her. CM also saw PR touch AP's buttocks. AP shifted toward CM in her chair to stop PR from touching her, but he continued to touch her. On cross-examination, CM explained that she took the photos because AP asked her to. CM sent the photos to AP a day or so later. CM clarified that she had seen PR touch AP on seven or eight different occasions.

AP explained that when PR first started touching her on her thigh, she thought it was a joke and told him to stop and moved his hand, but he did not stop. Sometimes he moved his hand farther up her leg or onto her other leg. He also put his hand between her legs and touched her private part. When she turned away from him and toward CM, he touched her buttocks. Some of his touching was painful and left bruises. He also touched her breast three different times while she was standing in front of him.

On cross-examination, AP said that she had bruises on her inner thigh and that she had showed a friend, PM, the bruises. AP did not ask her teacher for help because she felt awkward and embarrassed. AP did not initially report that PR had touched her between her legs; the prosecutor, Hugh Finkelstein, was the first person whom she told. She said that she felt comfortable with him and that he had "been doing this for quite a while." That morning, prior to the hearing, AP had learned that Finkelstein had been her Aunt Kara's teacher at

"prosecutor's school." AP had spent the night with her Aunt Kara the night before the hearing, and they had discussed what to expect in court. AP also began working with a counselor in November 2020.

The State next called Tracey Childress, the director of the Cooper Anthony Mercy Child Advocacy Center, to offer expert testimony on delayed disclosure. Defense counsel asked the court to either recuse itself or not allow Childress's testimony because the judge had been an OCC[1] attorney for many years and had called Childress as a witness many times. The defense expressed concern that the court might give "more credence to someone that was your direct witness on so many cases." The court denied the motion: "The Court is absolutely confident in its ability to listen to the testimony . . . and discern the testimony without bias or prejudice." Childress said that it is not uncommon for older children to delay reporting sexual abuse and that a child sharing that information with another child is not the same as reporting to an adult.

PM, a classmate of AP and PR, sat to CM's left (with AP on CM's right). She repeatedly observed PR's hand on AP's leg and upper thigh and said AP appeared "frozen, like she didn't know what to do." She also saw PR touch AP's buttocks and heard AP tell PR to stop. At soccer practice, PM saw bruises on AP's upper thigh as well. On cross-examination, PM clarified that she had seen PR's hand on AP's leg five or six times.

In its directed-verdict motion, the defense argued that the State had failed to prove sexual contact by forcible compulsion. On the forcible-compulsion element, the defense disagreed that "quantum of force is not relevant if it's against the will of the person" and argued

---

[1]Office of Chief Counsel, a division of the Arkansas Department of Human Services.

that "there's got to be some" physical force. The defense asserted that there was "no evidence that he threatened her in any way." The defense also disputed the sexual-gratification element: "[W]e're talking about two 13 year old kids in classroom of 20 people, 10 feet from the teacher. . . . Sexual gratification in that, um, scenario or in that environment is not going to be very gratifying if they're doing it." The circuit court denied the motion.

PR testified and admitted putting his hand on AP's thigh "a lot" but said that it was done "jokingly and playfully." He did not remember AP slapping his hand away or telling him to stop. He denied ever touching her private part but said he did touch her breast once accidently. He denied touching her buttocks and said he had touched the bottom of her hip in an attempt to get her attention. He said AP's demeanor changed in mid-October and she told him to stop "in a serious voice," so he did. On cross-examination, PR agreed that he wanted to put his hand on AP's thigh and that it felt good to put his hand on a girl's thigh. He had feelings for her at the time and wanted her to be his girlfriend.

The motion for directed verdict was renewed and denied. The court took the matter under advisement and later issued an adjudication order finding PR guilty of second-degree sexual assault. The court placed PR on twelve months' probation in a disposition order entered on 8 June 2021. He was also ordered to submit to a sex-offender screening and risk assessment and to begin counseling. On July 8, defense counsel moved for a new trial and the appointment of an impartial special prosecutor. The motion alleged two "material non-disclosures" that "materially affected [PR's] substantial rights." Specifically, (1) Hugh Finkelstein had failed to disclose his relationship with the disqualified Kara Petro and (2) the fact that AP had twice been hospitalized in acute mental placements within a short time before her participation in the trial.

The circuit court heard PR's motion on August 3. Kara Petro testified that she had met with Finkelstein two or three times to determine whether she would be called as a witness, but she had not helped him prepare the case against PR. The court also heard, among other things, that AP had been "very nervous," so Petro explained "what the courtroom would be like and I told her she was in good hands, he knows what he's doing, he literally teaches classes on how to prosecute."

From the bench, the circuit court denied the motion for new trial. The court found that Petro had never been assigned to prosecute PR's case and that she was not the disqualified prosecutor. It also found that "even if Kara Petro was somehow tied to this matter in an official prosecutorial manner there is no relationship between Kara Petro and Special Prosecutor Hugh Finkelstein to disclose." The circuit court's written order was entered on August 5, and PR's notice of appeal was timely filed on August 30.

PR's first three points on appeal challenge the sufficiency of the evidence. In reviewing the sufficiency of the evidence in a delinquency case, we apply the same standard of review as in criminal cases; we view the evidence in the light most favorable to the State, considering only the proof that tends to support the finding of guilt. *T.R. v. State*, 2018 Ark. App. 328, 552 S.W.3d 452. We will affirm if the adjudication is supported by substantial evidence, which is evidence that is of sufficient force and character to compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* In considering the evidence presented below, we will not weigh the evidence or assess the credibility of witnesses, because those are questions for the fact-finder. *J.N.A. v. State*, 2017 Ark. App. 502, 532 S.W.3d 582.

Arkansas Code Annotated section 5-14-125 (Supp. 2021) provides that a person commits sexual assault in the second degree if the person either (1) engages in sexual contact

5

with another person by forcible compulsion; or (2) being a minor, engages in sexual contact with another person who is less than fourteen years of age and not the person's spouse. Ark. Code Ann. § 5-14-125(a)(1) & (5). Forcible compulsion is defined in Ark. Code Ann. § 5-14-101(3) (Supp. 2021) as "physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person." Section 5-14-101(12)(A) defines "sexual contact" as "an act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female."

For his first point on appeal, PR argues that the State failed to prove that AP was less than fourteen years old, an element of the offense under § 5-14-125(a)(5). This argument was not raised below, but PR asks that we consider the argument under the third and fourth exceptions set forth in *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980). In *Wicks*, the supreme court listed four exceptions to the contemporaneous-objection rule. This court is familiar with *Wicks* and its short reach. *See McDaniels v. State*, 2012 Ark. App. 219. Here, we decline to apply a *Wicks* exception. Moreover, the State pursued the adjudication pursuant to § 5-14-125(a)(1), sexual contact by forcible compulsion, not subsection (a)(5).

For his second point, PR contends that the State failed to prove that he engaged in sexual contact with AP because the State failed to prove that he touched AP for the purpose of sexual gratification. "Sexual gratification" is not defined in the statute, but the Arkansas Supreme Court has construed the words in accordance with their reasonable and commonly accepted meanings. *Brehm v. State*, 2020 Ark. App. 442, 608 S.W.3d 166. Appellate courts have made clear that the State does not have to provide direct proof that an act is done for sexual gratification—if it can be assumed that the desire for sexual gratification is a plausible reason for the act. *Id*. Indeed, "case law makes clear that when sexual contact occurs, and there

6

is no legitimate medical reason for it, it can be assumed that such contact was for sexual gratification." *Ross v. State*, 2010 Ark. App. 129, at 4.

In this case, PR argues, the evidence is not "indicative of touching for sexual gratification." He notes that he never asked AP to keep the touching a secret; that he touched her in an open classroom with plenty of witnesses; and that he "predominantly" grabbed AP's legs repeatedly, but "he only touched her breasts when standing up while she was trying to get her phone[,] he only touched her buttocks when she was seated on her buttocks[,] and he only touched her between her legs once."

Having viewed the evidence in the light most favorable to the State, and considering only the proof that tends to support the finding of guilt as our standard of review requires, the evidence showed that PR touched AP on her legs and her private part between her legs, on her buttocks, and on her breast; CM and PM both saw PR grab AP on her buttocks; and PR admitted that it felt good to touch AP's thigh, that he had feelings for AP, and that he had wanted AP to be his girlfriend. While PR would like this court to evaluate the evidence differently, we will not weigh the evidence or assess the credibility of witnesses. *J.N.A.*, *supra*. And given the evidence presented, it can be assumed that the desire for sexual gratification was a plausible reason for PR's actions. *See Brehm*, *supra*.

Third, PR argues that the State failed to prove use of forcible compulsion. As explained above, forcible compulsion is defined as "physical force or a threat, express or implied, of death or physical injury to . . . any person." Ark. Code Ann. § 5-14-101(3). The supreme court has defined "physical force" as any bodily impact, restraint or confinement, or the threat thereof. *Ellis v. State*, 364 Ark. 538, 222 S.W.3d 192 (2006). The forcible-compulsion element does

7

not turn on the quantum of force applied but on whether the act was committed against the victim's will. *Johnson v. State*, 80 Ark. App. 79, 94 S.W.3d 344 (2002).

PR admits that he hurt AP, bruised her, and continued touching her after she told him to stop. But, he says, even considering only the proof that tends to support the finding of guilt, there is no evidence he used force to touch AP's leg for sexual gratification, and there was no force used to touch her buttocks, breast, or between her legs. PR never threatened AP with death or physical injury, nor did he restrain or confine her.

PR admits that he touched AP's legs multiple times against her will and that he persisted in his behavior after she asked him to stop. AP testified that she not only told him to stop but also moved his hand off her leg. At the same time, he asks this court to hold that touching AP's buttocks, breast, and private part was not against her will because he did not threaten or restrain her. We disagree and hold that the evidence showed that PR's touching was against AP's will, which is all that is necessary to prove physical force.

PR's fourth point asserts that the circuit court erred in denying his motion to recuse and in denying his motion for new trial. The decision whether to grant a new trial is left to the sound discretion of the circuit court, and it is not reversed in the absence of an abuse of discretion or manifest prejudice to the complaining party. *Farmer v. State*, 2019 Ark. App. 148, 571 S.W.3d 78. Likewise, a circuit court's decision to recuse itself is within its discretion, and we will not reverse absent a showing of an abuse of discretion. *Pedraza v. State*, 2015 Ark. App. 205, 465 S.W.3d 426.

PR contends that the circuit court erred in (1) denying his motion to recuse when Tracey Childress was called to testify and (2) not awarding him a new trial "when it was discovered the removed deputy prosecutor assisted in preparing the victim for trial." As a

8

reminder, at the hearing PR asked the court to recuse because it had called Childress as a witness numerous times during the court's time as a DHS attorney, and the defense was concerned that the court's familiarity with Childress "might have some effect on [the court's] impartiality." Now PR admits there was no misconduct on the part of the circuit court but argues that recusal was still necessary to maintain the appearance of impartiality.

Rule 2.11 of the Arkansas Code of Judicial Conduct provides that a judge must disqualify himself or herself in any proceeding in which the judge's impartiality might be reasonably questioned, including when the judge has a personal bias or prejudice concerning a party or a party's lawyer. *Pedraza, supra*. A circuit judge is presumed to be impartial, and a party seeking disqualification bears a substantial burden to prove otherwise. *Id*. However, we need not address whether the circuit court abused its discretion in declining to recuse itself because we hold that PR has changed his argument on appeal. Below, he expressed concern over actual basis by the circuit court because of its familiarity with Childress. On appeal, he concedes there is "no indication" of "any misconduct" by the circuit court but argues that the circuit court still should have recused itself based on an appearance of impropriety. Arguments not raised below are waived, and parties cannot change the grounds for an objection on appeal but are bound by the scope and nature of the objections and arguments made before the circuit court. *Craven v. State*, 2019 Ark. App. 271, 577 S.W.3d 42.

Regarding Kara Petro, PR argues that she continued to participate in the case after the special prosecutor was appointed, "even reassuring the victim and spending the night together the night before trial." PR suggests that Petro not only reported the abuse to the police but also improperly acted as an advocate in the case. Thus, the circuit court should have granted a new trial.

We cannot address this argument because it is raised for the first time on appeal. PR's motion for new trial alleged only a "relationship" between Finkelstein and Petro that should have been disclosed and did not argue that Petro had improperly participated in the prosecution's case. Nor did PR make such a motion at the August 3 hearing. Again, arguments not raised below are waived, and parties cannot change the grounds for an objection on appeal but are bound by the scope and nature of the objections and arguments made before the circuit court. *Craven*, *supra*.

Affirmed.

VIRDEN and VAUGHT, JJ., agree.

*Dusti Standridge*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.