

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CR–16–331

|  |  |
|---|---|
| CHACHAWAL CHAWANGKUL[1]<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered:** December 14, 2016<br><br>APPEAL FROM THE ARKANSAS COUNTY CIRCUIT COURT, NORTHERN DISTRICT<br>[NO. 01CR-15-34]<br><br>HONORABLE DAVID G. HENRY, JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

An Arkansas County jury convicted appellant Chachawal Chawangkul[1] of second-degree sexual assault involving then eight-year-old N.L., his girlfriend's granddaughter, and he was sentenced to serve five years in prison. On appeal, appellant argues that the trial court erred in denying his directed-verdict motions because the State failed to prove that he touched the child for the purpose of sexual gratification. We affirm.

### I. *Standard of Review*

A motion for directed verdict is a challenge to the sufficiency of the evidence. *Davis v. State*, 2009 Ark. App. 753. On appeal, in reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict to determine

---

[1]Appellant's names are often inverted, but the record confirms that Chawangkul is his surname.

whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* Decisions regarding the credibility of witnesses are for the trier of fact. *Id.*

## II.    *Sexual Assault*

A person commits sexual assault in the second degree if the person, being eighteen years of age or older, engages in sexual contact with another person who is less than fourteen years old and not the person's spouse. Ark. Code Ann. § 5-14-125(a)(3) (Supp. 2015). "Sexual contact" means any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female. Ark. Code Ann. § 5-14-101(10). "Sexual gratification" is not defined in the statute, but our supreme court has construed the words in accordance with their reasonable and commonly accepted meanings. *Elliott v. State*, 2010 Ark. App. 185.

## III.    *Trial Testimony*[2]

N.L. lived in a home belonging to her great-grandmother, D.B., along with her younger brother, mother, and grandmother. N.L.'s grandmother, Karen Jones, worked with and had dated appellant, who was known as "Joshua." Karen and appellant were at D.B.'s home on the night of February 8, 2015. D.B. routinely slept with N.L. and her brother.

---

[2]The State charged appellant with two counts of second-degree sexual assault involving N.L. and her great-grandmother. Even though the trial court ultimately granted appellant's directed-verdict motion as to the great-grandmother, because the allegations were of a sexual nature, we will refer to her as D.B.

SLIP OPINION

When they went to bed, Karen took appellant to her bedroom down the hall. D.B. testified that, around 1:00 a.m., she had awakened to see appellant in her bedroom. She noted that his hand had been near her pelvis. Even though she was already covered, appellant had said to her, "I cover you up." D.B. stated that she had thought nothing of it until N.L. woke her a few hours later.

N.L. testified that, around 3:50 a.m., she had awakened to find appellant on his knees on her side of the bed with his hand between her legs. N.L. said that appellant's hand had been underneath the covers and on top of her underwear. N.L. testified that appellant had said, "Shhh. Don't tell nobody," and left the bedroom. N.L. woke D.B. and said that appellant had touched her "frog," which was what she called her vagina. D.B. testified that, shortly after N.L.'s disclosure, she saw appellant as he came from Karen's bedroom; he put on his coat and left.

Detective Sergeant Eric Brown with the Stuttgart Police Department interviewed appellant on February 12, 2015. Brown testified that, prior to the interview, he had read appellant his *Miranda* rights and had given him the rights form to read and sign. Brown testified that he had been satisfied that appellant "completely understood English." Appellant's videotaped interview was played for the jury.

During the interview, appellant initially insisted that he had only covered D.B. and N.L. with a blanket. Later, appellant conceded that he had "probably brush[ed]" against D.B.'s vaginal area and that he had touched N.L.'s vagina for a few seconds outside of her orange panties. He used the word "groin" three times to describe where he had touched N.L. He agreed with Brown's observation that he had been "just sexually stimulating

[himself] by touching her." Appellant later said, "I was having a sensual arouse," to which Brown said, "Okay, it aroused you . . .," and appellant said, "Uh–huh."

Pamela Meeks, an employee with the Arkansas State Police Crimes Against Children Division, testified that the child-abuse hotline had received a report of abuse involving N.L. on February 10, 2015. Meeks went to N.L.'s school to speak with her on February 11, and N.L. had denied having been touched by any adult. Meeks then interviewed D.B. and Karen, who had provided the name "Joshua." Meeks then returned to N.L.'s school hours after the first interview, and N.L. revealed that "Joshua" had touched her "frog" on top of her panties. Meeks testified that it was not unusual for a child victim to be less than completely forthcoming at the start of an interview. She said, "You've got to realize that I am a complete stranger coming in asking about something really personal and embarrassing." According to Meeks, what N.L. had said in the second interview was consistent with earlier reports.

Appellant testified that he had come to the United States from Thailand in 1979 and had first come to Arkansas in 1986. He described various jobs he had held across the country and stated that he had been in the U.S. Army for three years, had received a college degree, and had gone to Pulaski Technical College majoring in computer science. Currently, he was working as a chef at The Lotus Blossom restaurant, where he had met Karen.

Appellant testified that he had gone to D.B.'s house around 10:00 p.m. on February 8 and that he and Karen had begun drinking. He said that, after Karen's family members had retired for the night, he had sex with Karen around 12:00 a.m. and left shortly afterward. Appellant admitted having gone into D.B.'s bedroom on that cold night, but he claimed to

have done so only to cover D.B. and the children with a blanket. He denied having touched D.B. at all and testified that he did not recall reaching under the covers and touching N.L.

Appellant testified that, during the interview with police, Brown had "tricked" him; that Brown had "put words in his mouth"; and that he had said that he touched N.L. only to satisfy Brown. He denied having said that he put his hand on N.L.'s "groin" and claimed that he did not know the meaning of that word. He stated that he had not read the forms given to him by Brown and had signed them all prior to the interview. Appellant said that lies had been told about him because Karen was mad at him for trying to break up with her.

## IV.    *Argument*

In arguing that the trial court erred in denying his directed-verdict motions, appellant contends that the State failed to prove that he had come into contact with N.L.'s undergarments for the purpose of sexual gratification. He asserts that not every touch of genitalia is an act involving sexual gratification because, otherwise, the words "sexual gratification" would be superfluous in the definition of "sexual contact." According to appellant, Brown had lied to him and had suggested words like "caressing" and "massaging." Appellant argues that, while "there may have been some sort of sensation when he pulled the covers up and came into contact with the garment[,] . . . it's not a crime if the contact isn't intentional."

Appellant contends that he did not admit the sexual-gratification element and that this is not a case where that element may be assumed. Appellant contends that a jury may assume sexual gratification only when the acts are "indisputably intentional and the purpose is obvious." He cites *Williams v. State*, 298 Ark. 317, 766 S.W.2d 931 (1989), where the

defendant had shocked his victim with a stun gun, had threatened to stab her with an ice pick, and had inserted his fingers into her vagina. Appellant asserts that the assumption has been allowed where there were "other equally brazen acts" and cites *Farmer v. State*, 341 Ark. 220, 15 S.W.3d 674 (2000) (defendant had beaten the victim and, while wielding a knife, had threatened to "fix it" so she could not be with another man, and then he shoved his fist inside her vagina); *Holloway v. State*, 312 Ark. 306, 849 S.W.2d 473 (1993) (defendant, who had touched one victim's private spot in front and back and had touched the breasts of another victim, was convicted of various sex offenses, along with terroristic threatening, against nine children at his day-care center); and *McGalliard v. State*, 306 Ark. 181, 813 S.W.2d 768 (1991) (defendant had touched victim between her legs for about an hour while threatening to beat her until she was black and blue if she told).

## V. *Discussion*

N.L. testified that appellant had touched her private parts on top of her panties while she was sleeping. A sexual-assault victim's testimony may constitute substantial evidence to sustain a conviction for sexual assault. *Castrellon v. State*, 2013 Ark. App. 408, 428 S.W.3d 607. The victim's testimony need not be corroborated, and the victim's testimony alone, describing the sexual contact, is enough for a conviction. *Id.* Aside from the victim's testimony, there was appellant's interview during which he said that he had touched N.L.'s vagina; that he was embarrassed and sorry for his actions; and that he worried that "[N.L.] would memorize [the event] for the rest [of] her life." The jury was not required to believe appellant's testimony at trial that he did not recall touching N.L. *Davis*, *supra*.

The supreme court has consistently held that it is not necessary for the State to provide direct proof that an act is done for sexual gratification if it can be assumed that the desire for sexual gratification is a plausible reason for the act. *Farmer*, *supra*. The State cites *Davis*, *supra*, where Davis had touched an eleven-year-old girl while she was sleeping. The victim said that she had awakened to find Davis's hand inside her panties touching her private part. On appeal, Davis had argued that there was no evidence that he had been sexually aroused or gratified by the contact. He said that, because he had not inserted his finger into the victim's vagina, no assumption was available. This court disagreed and affirmed Davis's conviction.

Appellant appears to believe that the assumption is permissible only under the most egregious circumstances and where an act is "indisputably intentional and the purpose is obvious." The desire for sexual gratification need only be "a plausible reason" for the act. *See Elliott*, *supra*; *see, e.g.*, *Holbert v. State*, 308 Ark. 672, 826 S.W.2d 284 (1992) (Holbert had admitted touching a three-year-old victim "on top of her panties" and "on her vagina."); *Castrellon*, *supra* (A twelve-year-old victim had awakened to find Castrellon rubbing her vaginal region over her clothes.); *Elliott*, *supra* (Elliott had touched an eleven-year-old victim's "private spot" with his foot for about ten minutes.).

Although appellant insisted that he had gone into the bedroom to cover D.B. and the children with a blanket, the testimony established that they were already covered. Moreover, the evidence showed that appellant had crept into a bedroom at night, had put his hand underneath the covers, had touched a sleeping child's vagina, and, upon waking her, had told her not to tell anyone. The jury could reasonably infer from these acts that it

was at least *plausible* that the purpose was sexual gratification. The State was not required to put on additional evidence that appellant was motivated by such desire. Even if no assumption were available, appellant said in his own words that he had had "a sensual arouse" while touching eight-year-old N.L.'s vagina. We hold that there was substantial evidence to support appellant's conviction for second-degree sexual assault and thus affirm his conviction.

Affirmed.

HIXSON, J., agrees.

GRUBER, J., concurs.

**RITA W. GRUBER, Judge, concurring.** I agree in all aspects with the majority's rejection of appellant's argument that the State failed to prove sexual gratification and with the holding that substantial evidence supports the appellant's conviction for second-degree sexual assault. I write separately to express my dismay that the name of this young victim appears throughout appellant's brief. The State's brief refers to the victim by initials rather than name, yet the State has filed no motion to redact the juvenile's name from the appellant's brief.

Rule 6-3 of the Rules of the Supreme Court and Court of Appeals requires counsel and the court to "preserve the juvenile's anonymity" by using initials in all adoption appeals and appeals originating in the juvenile division of circuit court. Ark. Sup. Ct. R. 6–3(a) (2016). Surely, absolute anonymity should also be afforded a juvenile who is the victim of a sexual crime.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.
*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.