Cite as 2020 Ark. App. 185

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CR-19-591

| | |
|---|---|
| TRACY WILL VAUGHN<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered** March 18, 2020<br><br>APPEAL FROM THE WHITE COUNTY CIRCUIT COURT<br>[NO. 73CR-18-151]<br><br><br>HONORABLE ROBERT EDWARDS, JUDGE<br><br>AFFIRMED |

## BRANDON J. HARRISON, Judge

This criminal appeal, with a state-law-privilege twist, concerns whether the State failed to provide material evidence to Vaughn's defense attorney in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *Brady*'s essence is that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87.

A White County Circuit Court jury convicted Tracy Vaughn of sexually assaulting nine-year-old K.H. and sentenced him to five years' imprisonment. The jury acquitted Vaughn on two counts of sexual indecency with a child, charges that involved K.H. and her friend, B.W. This appeal centers on counseling that K.H. received, the content of certain records, and whether Vaughn's counsel should have been allowed access to them.

K.H. received mental-health counseling before and after the events that led to the sexual-assault charges against Vaughn occurred. Vaughn argued in the circuit court that he should have been given access to K.H.'s counseling records because they likely contained evidence favorable to his defense. The court ultimately denied Vaughn access and did not perform a *Brady* analysis. The court reasoned that the counseling records were absolutely privileged under Arkansas Rule of Evidence 501[1] and Ark. Code Ann. § 17–27–311 (Repl. 2018).[2] Consequently, the circuit court rejected Vaughn's argument that he was entitled to potentially exculpatory evidence contained in K.H.'s mental-health records under *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987). *Ritchie* is a post-*Brady* case that held a defendant has a due process right to require a state agency to disclose exculpatory or impeachment evidence that it possesses. *Ritchie*, 480 U.S. at 57. In this case, the circuit court ultimately ruled that "the patient/client/therapist privilege is paramount and irrespective of exculpatory evidence. These [mental-health] records are not subject to inspection."

---

[1]The circuit court miscited Arkansas Rule of Evidence 501. The psychotherapist-patient privilege of Ark. R. Evid. 503 is at issue in this appeal.

[2]This statute states:

(a) For the purposes of this chapter, the confidential relations and communications between a licensed counselor and a client, a licensed associate counselor and a client, a licensed marriage and family therapist and a client, or between a licensed associate marriage and family therapist and a client are placed upon the same basis as those between an attorney and a client.

(b) Nothing in this chapter shall be construed to require that any privileged communication be disclosed.

The court's decision was one of federal constitutional magnitude because, in this case, it was the prosecution who procured the counseling records as best we can tell. More specifically, the State appears to have provided the disputed counseling records to the court during a pretrial hearing after procuring them using subpoenas. (More on this later.) It also appears that neither K.H. (acting through a parent or guardian) nor her health providers raised any evidentiary privilege to block the prosecuting attorney from receiving confidential communications that occurred between K.H. and her counselor.

Vaughn argues to this court that the circuit court erred when it denied him access to the counseling records, which violated his federal and state constitutional rights. Vaughn seeks a new trial because, in his view, being kept in the dark about the counseling records' content prejudiced him at trial.

I. *K.H.'s Counseling Records*

Vaughn appears to have first learned about the counseling issue from an affidavit that the State attached to its initial criminal information. That affidavit recited that K.H. had "recently disclosed *during her therapy session* that Tracy [Vaughn] exposed his penis and made her touch it." (Emphasis added.) This revelation prompted Vaughn's counsel to move the court to compel the prosecuting attorney to disclose K.H.'s counseling (or mental-health) records pursuant to due process rights he claimed under the Fourteenth Amendment to the United States Constitution. *See Brady*, 373 U.S. 83; *United States v. Bagley*, 473 U.S. 667 (1985); *Ritchie*, 480 U.S. 39; article 2, section 8 of the Arkansas Constitution; Arkansas Rules of Criminal Procedure 17.1(a)(iv) and 17.4(a). In his motion, Vaughn argued that "the State has waived any privilege, or should be estopped from asserting it, inasmuch as the

3

affidavit accompanying the felony information asserts that an accuser 'recently disclosed in her therapy session that Tracy exposed his penis and made her touch it.'" According to Vaughn, Arkansas's psychotherapist-patient privilege set forth in *Johnson v. State*, 342 Ark. 186, 27 S.W.3d 405 (2000), and *Holland v. State*, 2015 Ark. 341, 471 S.W.3d 179, does not apply because "the counseling would have been part of the investigative and prosecutorial process and not independent of it . . . [and] those state law privileges must fall before due process guarantee set forth in *Ritchie*." He therefore asked the circuit court to compel the State to disclose these records to him. Alternatively, he asked the court to review the records in camera and assess them for exculpatory or impeachment material.

The circuit court held a pretrial hearing on motions that included Vaughn's discovery motion. The prosecuting attorney arrived at the pretrial hearing with K.H.'s counseling records. The circuit court received them from the prosecutor and placed three exhibits under seal in three separately sealed envelopes. They are labeled court's exhibits Nos. 1, 2, and 3. The first exhibit contains the alleged *Brady* material that Vaughn says prejudiced his case when the prosecutor refused to disclose it. Court's exhibit No. 1 covers K.H.'s records that were generated by one counselor who treated K.H. from approximately January 2011 through January 2018 (Provider A).

Court's exhibit No. 2 contains the following: K.H.'s records from a second provider (Provider B) that were generated in 2018; a copy of a 10 May 2018 subpoena from the White County Prosecuting Attorney's Office to the "Keeper of the Records [of Provider B]"; and a fax transmittal sheet from Provider B to the prosecuting attorney.

4

Court's exhibit No. 3 consists of: B.W.'s July 2016 records from Provider C, which is an outpatient service provider, and a White County prosecutor subpoena demanding those records.

During the pretrial hearing, the prosecuting attorney argued that sealed exhibits 1, 2, and 3 should not be disclosed to defense counsel:

> [Vaughn] acts as if these—both of these girls, the first time they ever go to treatment is after this case and they are sent there by the State. Both of them were in treatment with those same providers previously. Now, yes, they did go back after this happened, but they've not been ordered there by the State and we've not—*up until the Court asked the State to get the records*, we did not have access, we did not seek to admit those records[.] . . . And we would argue that they [the victims] have not waived that privilege that allows them to get assistance that they need, other than if there is something exculpatory to the Defendant. (Emphasis added.)

The record is not clear on which provider's records, if any, the court asked the State to get, in what manner the court communicated its request, or when this occurred. Nor is it clear whether Vaughn's counsel was told that the court asked the State to get some of K.H.'s counseling records, if it in fact did so.

What we do know is that the prosecutor's office sent a subpoena demanding K.H.'s records to Provider B and a subpoena demanding B.W.'s records to Provider C. How the prosecutor procured Provider A's records (the ones at issue here) is unclear because the record does not contain a subpoena from the prosecutor's office as to that provider. We assume a third subpoena was used but cannot state that as a fact. No party below made a good record on how the records were procured from the various providers. And no party made a good record on whether K.H.'s parent(s) or legal guardian(s) were made aware of what was going on. There is no written authorization in the records from a person legally

5

empowered to permit the State to get confidential health information. Nor, as we have said, is there anything in the record showing that the three separate care providers, or K.H. herself through a representative, attempted to resist the subpoenas for the same reasons the State now says that Vaughn was never entitled to receive them. No statutory authority was cited, or otherwise obviously invoked, for the disclosure of the confidential information.

Despite the unknowns, we know that defense counsel argued during the hearing that, among other things, he needed to know "whether they're telling the truth or not and that records of treatment would be the best evidence." He also argued that the recorded statement Vaughn gave to the police in 2016 contained statements by police officers "about whether the girls are going to have to go to therapy" and that "some of these [records] appear to be the records of the therapy that is referred to [in the police interview]." Vaughn asked to examine the records with the prosecutor "sitting right there so I can discuss particular issues more cogently . . . and we can do this under seal."

The court ruled from the bench that the State did not send the girls to therapy "for investigative purposes" because the "first 118 pages" of the records "occurred in 2011 through '14, before these allegations came to light in 2016[.]" Although it is clear enough that the court reviewed the records to some extent, it is not clear to what extent or to what depth, content-wise, the court did so. In the end, the court ruled from the bench that K.H.'s records were absolutely privileged under Arkansas law and therefore could not be disclosed to Vaughn under any circumstance.

In response to Vaughn's request for a more specific ruling, the court said this:

> With respect to *Ri[t]chie*, that is a case that dealt with the Pennsylvania statute that made the entire investigative file of the Child Protective Services

Agency in Pennsylvania privileged and not specifically address patient/client records, therapists, interviews. . . . I am going to stand by my ruling, that the patient/client/therapist privilege is paramount and irrespective of exculpatory evidence. These records are not subject to inspection of admissibility and your objection—exceptions are noted. . . . I'm finding that the privilege granted to a child in seeking therapy with a licensed associate counselor or doctor—I hate to use this word, trumps the due process, confrontation and other Constitutional rights you claim. . . . That's for the Appellate Court to determine if they think I'm wrong on the privilege issue.

Despite numerous proffers as to what the undisclosed records might contain, the court rejected all of Vaughn's requests and arguments to that effect before and during the trial. During a bench conference held while K.H. was on the stand, Vaughn explained why court's exhibit No. 1 (Provider A's records) would aid his cross-examination.

It is—it is my—it is my belief that . . . the girl has been coached and—and to make the allegation of touching—touching by Mr. Vaughn, . . . her testimony is she—she made the claim first only to this Ms.—the counselor after she's denied it the second time. Anyway, and then, of course, I'm going to need the records for that, obviously, you're denying it[.]

The circuit court replied, in part:

I have made my ruling a number of times that the counseling records are not admissible and that the statements she made to the counselor were not admissible. . . . I am not going to let you do anything with the counseling records based on my prior ruling. Period.

The case was fully tried, and Vaughn was convicted of one count of sexually assaulting K.H. in the second degree. Vaughn filed his notice of appeal and, in due course, the record.

After the record was lodged with this court's clerk, Vaughn's counsel moved this court for access to the three sealed court exhibits, which he had never seen. We granted the motion and allowed both parties access to the sealed exhibits so that they could make

7

informed arguments on appeal regarding the correctness of the circuit court's decision to deny Vaughn access to the disputed therapy records.

A. Did the State Access and Withhold K.H.'s Records and Thereby Trigger *Brady*?

In a typical case—meaning absent a statutory exception, the victim's consent, or a court order—a person's health records are not any more accessible to a prosecuting attorney than to a defense attorney. Here, however, the prosecuting attorney possessed the records at issue. Whether that was done at the behest of the circuit court, or on the lawyer's own initiative, *Brady* was triggered. *See, e.g.*, *State v. Allen*, 1999 WL 5173 (Tenn. Crim. App. Jan. 8, 1999). But the circuit court did not fully perform a *Ritchie/Brady* analysis because it hung its decisional hat solely on Arkansas privilege law. That decision was an error of law on these facts.

A criminal defendant has a due process "right to put before a jury evidence that might influence the determination of guilt," or, in other words, a right to obtain and present exculpatory evidence. *Ritchie*, 480 U.S. at 56. In addition, the Sixth Amendment to the United States Constitution provides a criminal defendant with the right to confront witnesses, which is achieved through cross-examination. *Davis v. Alaska*, 415 U.S. 308, 315 (1974). The Arkansas Supreme Court has also recognized that Ark. R. Crim. P. 17.1 requires the State to disclose to defense counsel relevant or exculpatory material "which is or may come within [its] possession, control, or knowledge[.]" *Johnson v. State*, 342 Ark. 186, 197, 27 S.W.3d 405, 412–13 (2000), *cert. denied*, 532 U.S. 944 (2001).

Here is how the *Brady* process generally works. When a defendant like Vaughn has made "some plausible showing" that information that the prosecuting attorney or state agent

8

has would be "both material and favorable to his defense," and the records are not absolutely privileged under state law, then the defendant is entitled to an in camera review of the evidence, at a constitutional minimum. *Ritchie*, 480 U.S. at 58 n.15 (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867(1982)).[3] *Compare Taffner v. State*, 2018 Ark. 99, at 12, 541 S.W.3d 430, 437 (holding that a defendant was entitled to an in camera review of DHS records involving a victim in a child-rape case when there was a preliminary showing that the records contained allegedly false accusations by the victim of sexual abuse and Arkansas statutes involving DHS permitted disclosure in certain circumstances) *with Holland*, 2015 Ark. 341, at 13–15, 471 S.W.3d at 187–88 (holding private records of victim's disclosure of sexual abuse to a therapist were not discoverable under *Brady v. Maryland*, 373 U.S. 83 (1963)).

---

[3]In *Ritchie*, the Pennsylvania legislature only protected the CYS records with a qualified privilege. *Id.* at 57–58. Other types of records may be absolutely privileged in Pennsylvania. *See Pa. v. Wilson*, 602 A.2d 1290, 1297 (Pa. 1992) (holding that defendant was not entitled to disclosure of victim's records held by a rape crisis center where those records were protected by an absolute statutory privilege); *N.D. v. Spath*, 581 N.W.2d 123, 126 (N.D. 1998) (rejecting defendant's confrontation clause claim and noting that although the evidentiary privilege at issue contained some limited exceptions, it did not contain a general exception for disclosure of records pursuant to court order). But other courts have found that a defendant's constitutional rights to a fair trial and to confront the witnesses against him may override a medical-patient privilege. *See, e.g.*, *N.Y. v. Maynard*, 363 N.Y.S.2d 384 (Sup. Ct. 1974). The Supreme Court of the United States has recognized privacy interests and policy justifications for protecting psychotherapist records under the federal rules of evidence. *See, e.g.*, *Jaffee v. Redmond*, 518 U.S. 1 (1996). So a victim's interest in privacy, the legislature's intent to maintain such a privilege, and public-policy reasons for preserving confidential communications between victim and counselor are all considerations when deciding whether a victim's counseling records must be disclosed to defense counsel assuming the privilege has been properly asserted and established. State courts have reached different conclusions about a criminal defendant's constitutional right to pierce an absolute sexual-assault counselor privilege. *Compare In re Crisis Connection, Inc.*, 949 N.E.2d 789, 802 (Ind. 2011) *with Mass. v. Dwyer*, 859 N.E.2d 400, 419 (Mass. 2006).

In *Johnson*, our supreme court rejected the argument that a criminal defendant has the right to see a victim's privileged mental-health records during pretrial discovery—or examine them during a pretrial witness-competency hearing. *Johnson*, 342 Ark. at 193, 27 S.W.3d at 410. There is no holding, however, on whether a criminal defendant's constitutional rights *at trial* may outweigh the victim's right to assert a privilege—especially when the State has previously obtained the disputed records by subpoenas based on its own initiative or at the court's behest. In fact, the prosecuting attorney in *Johnson* did not access or possess the victim's mental-health records. *Id.* at 197, 27 S.W.3d at 412 (stating that the appellant's argument "presupposes that the State had access to or knowledge of the records and their contents.").[4] *Johnson* therefore cannot control this case.

This case is different. Here the prosecutor had in hand K.H.'s records from two separate private counseling centers. The printed date on court's exhibit No. 1 from Provider A is 15 May 2018. The facsimile transmittal date from Provider B is 11 May 2018. Provider C's records relate solely to B.W. and are relevant only because they contain a response from Provider C, on 25 May 2018, to the White County prosecuting attorney's subpoena. The pretrial hearing on Vaughn's discovery motion was held in August 2018.

It does not appear that Vaughn ever tried to compel the production of K.H.'s records by way of a subpoena like the State did; nor did he seek to compel testimony from her therapist at trial. But even if K.H.'s records could be kept completely confidential—

---

[4]The dissenting justices would have held that Johnson "was hamstrung in his cross-examination of [the victim] and in his defense in general and, thus, was denied his right to a fair trial." *Johnson*, 342 Ark. at 207, 27 S.W.3d at 418 (Brown, J., dissenting).

meaning a defendant would not be entitled to the records under any circumstance—K.H.'s records were not, in fact, kept confidential because they were disclosed to the prosecutor.

Having determined that the State possessed the disputed therapy records, for *Brady* purposes, the next question is whether the evidence was "favorable to [the] accused." *Brady*, 373 U.S. at 87.

### B. Was the Withheld Evidence Favorable to Vaughn?

Vaughn made a plausible showing that some of K.H.'s counseling records were procured and possessed by the prosecutor and that the records contained impeachment or exculpatory evidence critical to his defense. In our view, the circuit court should have conducted an in camera review of K.H.'s records for evidence favorable to his defense. We disagree with the State's assertion that K.H. asserted a privilege that shielded the records from review.

The State correctly notes that "[t]he privilege under Ark. R. Evid. 503 does not belong to the State. It belongs to the patients and their physicians who are presumed to have the authority to claim the privilege." Yet, the State does not identify any point in time in this case when K.H., her parents or guardians, or her healthcare providers *asserted* any privilege or otherwise resisted the State's subpoenas. Of course, the subpoenas beg this question: if the State recognizes that K.H. holds the privilege then why did it send the subpoenas? Where is an on-the-record discussion with the court, initiated by the prosecutor, on why it should not be ordered to procure the records if that is, in fact, what happened? As we have said a few times now, we cannot be certain what happened and when because there is no record on this critical facet of the proceedings.

11

The State argues that Vaughn did not ask the court to make an in camera review. But he did ask, and the circuit court did exactly that, although the depth to which it went is murky. It is clear, however, that the court's "no disclosure" decision was not based on a *Brady* analysis. "I am going to stand by my ruling, that the patient/client/therapist privilege is paramount and irrespective of exculpatory evidence."

What to do? This court has in the past remanded a case to the circuit court and directed it to conduct an in camera review of what an appellant claims to be *Brady* material. But that has been done when it was known that the circuit court never looked at the material. *E.g.*, *Harper v. State*, 2019 Ark. App. 163, 573 S.W.3d 596. Our supreme court, on the other hand, has held that a remand is unnecessary when the circuit court had already reviewed the information. *See, e.g.*, *Holland*, 2015 Ark. 341, at 18, 471 S.W.3d 179, 190. This case falls into the latter category. Consequently, we will review the *Brady* issue rather than remand the case to the circuit court.

So, is the disputed information favorable to Vaughn? Yes. K.H. was, without question, a critical witness for the prosecution during the trial; and court's exhibit No. 1 contains potentially exculpatory and impeachment evidence relevant to her testimony. The second prong of *Brady* has therefore been met. *See Strickler v. Greene*, 527 U.S. 263, 282 n.21 (1999) ("Our cases make clear that *Brady*'s disclosure requirements extend to materials that, whatever their other characteristics, may be used to impeach a witness."); *see also Williams v. Taylor*, 529 U.S. 420, 438 (2000) (main witness's mental-health record was potential *Brady* material when there were "repeated references to a 'psychiatric' or 'mental health' report in a transcript"). We move to the third *Brady* element.

12

## C. Was the Evidence in K.H.'s Records Material?

Vaughn argues that he was prejudiced by the nondisclosure because the records show that K.H.'s version of events changed during counseling, that she asserted facts at trial that she had previously denied, and that Provider A's records generally cast doubt on her testimony. Vaughn believes he could have effectively impeached K.H.'s testimony by showing that the course of counseling or therapy caused her story to change, that the therapy used "recover[ed] memories" and "dreams," and that K.H. had expressly denied the sexual abuse many times to her counselor. He also says that he could have retained an expert witness to help him critique what happened during K.H.'s therapy if he had access to the records sooner. Specifically, Vaughn contends that K.H.'s therapist helped coach the "trauma narrative" that was ultimately reported to law enforcement, years after the alleged events occurred.

To prevail under *Brady*'s "materiality" prong, Vaughn must show that the disputed records create a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Isom v. State*, 2018 Ark. 368, at 4, 563 S.W.3d 533, 538, *cert. denied*, 140 S. Ct. 342 (2019) (applying *United States v. Bagley*, 473 U.S. 667, 682 (1985)). And a "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Bagley*, 473 U.S. at 682. *But compare Jimenez v. State*, 918 P.2d 687 (Nev. 1996) (adopting a more protective "possibility" standard under Nevada's state constitution); *N.Y. v. Fuentes*, 907 N.E.2d 286, 289 (N.Y. 2009) (Under New York law, if the defendant has "ma[de] a specific request for a document" that is withheld, then the appropriate standard to measure materiality is whether there is "a

13

reasonable possibility" that the failure to disclose the exculpatory evidence contributed to the verdict.).

We acknowledge the force of Vaughn's argument and the surrounding circumstances, but we nonetheless hold that there is no reasonable *probability* that the results of the trial would have been different had the exculpatory/impeachment evidence contained in K.H.'s disputed records been disclosed to Vaughn.

The jury convicted Vaughn of second-degree sexual assault. A person commits sexual assault in the second degree under Ark. Code Ann. § 5-14-125(a)(3) (Repl. 2013) if he is eighteen years of age or older and engages in sexual contact with another person who is not his spouse and is less than fourteen years of age. "Sexual contact" means any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female. Ark. Code Ann. § 5-14-101(11). With these statutory elements in mind, we will explain why it was not reasonably *probable* (as opposed to merely possible) for the undisclosed records to have changed the trial result.

The State's brief catalogs some sexual instances that, when viewed in a light favorable to the State, support the verdict. We need not get into those details here because a primary problem for Vaughn, under our *Brady* analysis, is his interview by police detectives on 13 June 2016. We will concentrate on it for brevity's sake. By doing so we do not minimize K.H.'s testimony, which the jury was free to accept or reject. A focus on Vaughn's statement, however, amply supports our *Brady* decision.

As we have said, the full interview of Vaughn by the police was received as evidence at trial, as State's exhibit no. 15 by way of a video recording. During that four hours-plus

14

interview, which often meandered and was at times unclear, Vaughn admitted touching K.H.'s vagina while she was in the bathtub. He admitted going into the bathroom, sitting on the toilet, and using his phone while K.H. was bathing. Here is an excerpt of Vaughn's recorded police statement that was played to the jury during his trial:

DETECTIVE: Did you ever touch the bare—bare vagina?

VAUGHN: Yes, I mean, I've said in the bath tub it was just a—kind of, like I said, just washed, you know, because she'd want me to wash her and I washed her. I, you know,

DETECTIVE: How many times have you touched her bare vagina?

VAUGHN: Once.

DETECTIVE: Was that in the bedroom or the bathroom?

VAUGHN: The bathroom.

DETECTIVE: How did you do that? How did you touch her?

VAUGHN: She was—I had washed her back, washed her butt, and she was kind of on her hands and knees in the bath tub and I washed.

DETECTIVE: And you accidentally touched her or did you—

VAUGHN: No, I mean, I just kind of, just washed her. Not really, just— it wasn't like a –like—it wasn't nothing like that.

DETECTIVE: Now, I'm not saying you put a finger in or anything like that. Hand against skin—

VAUGHN: Uh-huh.

DETECTIVE: —is it only one time in the bathroom?

VAUGHN: Yes.

DETECTIVE: Okay. Did you just rub around and that feeling came back and you're like, oh shit, I got to quit and—

15

VAUGHN:    No. It wasn't like rub around, it was just wash.

We acknowledge that during the police interview, Vaughn consistently denied being aroused or gratified by touching K.H.'s vagina. And we note that he was not criminally charged until more than two years after the police interview.

K.H. testified about the bathing incident at trial. She said that during the summer of 2016 she turned nine years old, and at that time she and her mother lived in Vaughn's home. K.H. testified that Vaughn would sit on the toilet "on his phone, drinking." She told the jury about a time that Vaughn entered the bathroom while she was taking a bath, put his hands into the water, and touched her vagina:

> And he leans over and since I was in the water in the bathtub, he swishes his hand around the water and each time I move, he'd get closer to me and then about four or five times, he would touch my vagina [with his hands].

On cross-examination, K.H. said that she told "Ms. Felicia" (at Child Safety Center) twice that no one had touched her vagina. During the trial she said the opposite: Vaughn had touched her. Defense counsel asked, "[B]ut all these times before you said no, didn't you?" K.H. replied, "Because I think I was just scared to admit that he did it." So the jury heard that K.H. had denied to investigators, at least twice, that Vaughn had touched her; in fact, she had told them nothing happened. K.H. testified that she was "pretty sure [she] told [the sexual abuse] to Ms. Sara [counselor at Provider A] after we stopped going to the Child Safety Center." The jury also heard that K.H. made the allegations against Vaughn approximately two years after the touching had occurred and after she had been counseled.

There was no disagreement that Vaughn touched K.H.'s vagina; his version and her version did not contradict one another on the essential point that there was a "touching,

16

directly or through clothing, of the sex organs" of K.H. Nor was there any dispute that K.H. first denied the abuse multiple times only to disclose it two years later after she had been in counseling. Vaughn may have been able to impeach K.H. in some manner with the undisclosed records. That, of course, can be a critical moment during a trial. But he was able to elicit testimony that K.H. had changed her story during the course of counseling and cross-examined her at trial.

Cases interpreting the "sexual contact" definition focus on whether the act was done for the purpose of sexual gratification. *E.g.*, *Chawangkul v. State*, 2016 Ark. App. 599, 509 S.W.3d 10; *see also Farmer v. State*, 341 Ark. 220, 223, 15 S.W.3d 674, 676 (2000) (The State must prove that the desire for sexual gratification is a "plausible reason for the act."). Granting the undeniable importance of impeachment evidence, the point remains that Vaughn admitted touching K.H.'s vagina, and in the end, the jury was tasked with deciding whether Vaughn's touching K.H. in the bathtub—among other interactions the State adduced at trial—was done for sexual gratification. He said it was not in the interview. Only Vaughn will ever know whether he acted with the purpose of sexually gratifying himself. Therefore, we cannot say that the undisclosed records would have made enough of a difference on a key element of the sexual-assault charge: whether it was plausible that the admitted vaginal touching occurred for sexual gratification. "[A] showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal[.]" *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). But it must be shown that the favorable evidence, in the context

of the entire case, could "put the whole case in such a different light as to undermine confidence in the verdict." *Id*. at 435.

K.H.'s counseling records shed no light on Vaughn's purpose when he touched her. Whatever the content of K.H.'s records, the jury would still have had to determine, based on all that it heard at trial, whether a forty-six-year-old man who touched a nine-year-old girl's vagina in the bathtub did so with the purpose of sexually gratifying himself. In our view, the absence of the undisclosed records does not undermine our confidence in the jury's verdict; therefore, the records were not "material" under *Brady*. This means that Vaughn suffered no prejudice under *Brady*'s standard.

## II. *Conclusion*

Vaughn's conviction for second-degree sexual assault is affirmed.

Affirmed.

SWITZER and VAUGHT, JJ., agree.

*Jeff Rosenzweig*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Pamela Rumpz*, Senior Ass't Att'y Gen., for appellee.