Cite as 2020 Ark. App. 442

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CR-19-905

| | |
|---|---|
| JOSEPH ANTHONY BREHM<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered:** September 30, 2020<br><br>APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT<br>[NO. 23CR-17-1261]<br><br>HONORABLE CHARLES E. CLAWSON, JR., JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

Joseph Anthony Brehm appeals his conviction by a Faulkner County Circuit Court jury of one count of second-degree sexual assault. On appeal, he argues that the State failed to provide sufficient evidence that his contact with the victim, M.H. (DOB 08/24/11), was for the purpose of sexual gratification. We affirm.

On August 21, 2019, the jury trial took place. At the trial, Brandy Danielle Jameson, M.H.'s mother, testified that she dated Brehm from February to August 2017. During that time, she lived in Vilonia with her three sons, who ranged in age from ten to seventeen, and M.H., who was in kindergarten. Brandy explained that while she and Brehm were dating, they called him "Leroy." She testified that Brehm stayed overnight most of the time, and he slept in her room. M.H. had her own room, and Brandy and M.H. shared the bathroom that had a bathtub. Brandy testified that in late August 2017, she received a phone

call from the Arkansas State Police at the Child Advocacy Center and learned that Brehm "had done something to my daughter." When Brandy confronted Brehm, he did not react but told Brandy, "Just so you know, she would try to look under the blanket at him" and that M.H. had "called him into the bathroom to ask him to blow up a blue balloon." Brandy testified that during their relationship, she never asked Brehm to bathe M.H., and she stated that "there was not ever a time where he should have been in the bathroom with M.H." Brehm did not have a "caretaking role" regarding M.H. Brandy explained that August 29, 2017, was the first time she had been away from home. Her father had surgery that day, and she was at the hospital with him until 11:00 p.m. or midnight. M.H. was asleep when she returned home.

Julianna Yateman, the school counselor at Vilonia Primary School, testified that in late August 2017, M.H. was very emotional, upset, and crying in class, and Yateman brought the child into her office. Once M.H. calmed down, she told Yateman that "Leroy" had done something to her. Yateman stated that M.H. was upset and angry and "vocal about what happened." M.H. explained to her that something had happened while she had been sleeping. She stated that "Leroy" had been "digging in her pants," and she clarified that her pants were on her at the time. Yateman called the child-maltreatment hotline.

M.H. was seven years old when she testified at the trial. M.H. explained she had forgotten what grade she was in when "Leroy" lived with them but that they had lived together with her mom and brothers. M.H. stated there was one bathtub in that house and that she had been able to take a bath by herself when she lived there, and she did not share

a bedroom with anyone. Pointing to a picture of a girl on which she had circled the vaginal area, she identified the "wrong spot" and began crying and stated that "someone has touched me on my wrong spot." After a short recess, M.H. stated, "Leroy touched me on my wrong spot. Leroy has touched me with his wrong spot before. I was in my bedroom when he put his wrong spot on me. He put his wrong spot on my nose. Leroy is in the courtroom today." On cross-examination, M.H. stated that "Leroy" was the only man that had lived with their family. She testified that "Leroy" never helped her with her clothes or bath, and no one but her mother helped her.

M.H.'s brother, B.C., testified that Brehm had lived with their family in late August 2017 when he was seventeen years old. B.C. testified that the day his mother was at the hospital, he saw Brehm standing in the doorway of the bathroom while M.H. was taking a bath and that Brehm had never been responsible for helping M.H. in the bath or helping her get dressed. B.C. asked Brehm was he was doing, and Brehm told B.C. he was helping M.H. clean her toys. B.C. told Brehm to leave the bathroom, and he did. B.C. shut the bathroom door, and he did not notice anything unusual about M.H. the next couple of days. M.H. began staying in B.C.'s room after that and "didn't trust being in her room alone."

Brehm moved for a directed verdict, asserting that though there was testimony that Brehm had touched M.H.'s genitalia, there was no evidence of sexual gratification, and other explanations such as helping the child bathe or get dressed could explain the touching. The court denied the motion. No further evidence was presented, and the jury found

Brehm guilty of second-degree sexual assault. This appeal followed. On appeal, Brehm asserts that the circuit court erred in denying his motion for directed verdict because the State presented no evidence of Brehm's sexual gratification. We affirm.

A motion for directed verdict is a challenge to the sufficiency of the evidence. *Thompson v. State*, 2019 Ark. App. 391. On appeal, in reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict to determine whether the verdict is supported by substantial evidence, direct or circumstantial. *King v. State*, 2018 Ark. App. 572, 564 S.W.3d 563. Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id*. Decisions regarding the credibility of witnesses are for the trier of fact. *Id*.

A person commits sexual assault in the second degree if the person, being eighteen years of age or older, engages in sexual contact with another person who is less than fourteen years old and not the person's spouse. Ark. Code Ann. § 5-14-125(a)(3) (Repl. 2013). "Sexual contact" means any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female. Ark. Code Ann. § 5-14-101(10) (Supp. 2019). "Sexual gratification" is not defined in the statute, but our supreme court has construed the words in accordance with their reasonable and commonly accepted meanings. *Vaughn v. State*, 2020 Ark. App. 185, 598 S.W.3d 549.

Essentially, Brehm asks the panel to reweigh the evidence, arguing that "the indirect evidence presented does not show substantial evidence of sexual gratification[.]" Brehm

compares his case to other sexual-assault appeals that involve, in his view, more persuasive evidence of "some indicia of sexual gratification." His argument is not well taken. Our appellate courts have consistently held that it is not necessary for the State to provide direct proof that an act is done for sexual gratification if it can be assumed that the desire for sexual gratification is a plausible reason for the act. *See id.*; *Chawangkul v. State*, 2016 Ark. App. 599, 509 S.W.3d 10; *Farmer v. State*, 341 Ark. 220, 15 S.W.3d 674 (2000).

M.H. testified that Brehm touched her on her "wrong spot" and indicated on a picture of a girl that the "wrong spot" means genitalia. She further testified that Brehm touched her with his genitalia, and he placed his genitalia on her nose. B.C., Brandy, and M.H. all testified that that Brehm never helped with bathing or dressing M.H. In light of this testimony, we are not persuaded that the circuit court erred in denying Brehm's directed-verdict motion. It is plausible that Brehm touched M.H.'s genitalia and placed his genitalia on her nose in the pursuit of sexual gratification, and the circuit court did not err in denying his motion for a directed verdict on the sexual-gratification requirement.

Affirmed.

GLADWIN and WHITEAKER, JJ., agree.

*Hancock Law Firm*, by: *Alex R. Burgos*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Michael L. Yarbrough*, Ass't Att'y Gen., for appellee.

5